[No. B205182. Second Dist., Div. Five. Nov. 4, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
CARLOS OCHOA GARCIA, JR., Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to rule 8.1110(b) of the California Rules of Court, parts I., II., III.A.–B., and IV. are certified for publication.

COUNSEL

Randy S. Kravis for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Margaret E. Maxwell and Chung L. Mar, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

TURNER, P. J.—

## I. INTRODUCTION

Defendant, Carlos Ochoa Garcia, Jr., appeals after he was convicted of two counts of second degree robbery (Pen. Code,[1] § 211); one count of firearm possession by a felon (§ 12021, subd. (a)(1)); two counts of carjacking (§ 215, subd. (a)); two counts of grand theft auto (§ 487, subd. (d)(1)); and two counts of unlawful driving or taking of an automobile. (Veh. Code, § 10851, subd. (a).) The jurors also found defendant was previously convicted of two serious felonies; he had served five prior prison terms; and he personally used a firearm in the commission of all of the offenses except count 3, firearm possession by a felon. (§§ 12022.5, subd. (a), 12022.53, subd. (b).) Because of his prior serious and violent convictions, defendant received indeterminate sentences as to every count. (§§ 667, subd. (e)(2), 1170.12, subd. (c)(2).) Defendant contends he was denied the right to effective assistance of counsel. We and the parties have raised many sentencing contentions.

In the published portion of the opinion we resolve two sentencing issues. First, we analyze whether the sentencing court had a duty to either impose or strike the section 667.5, subdivision (b) one-year prior prison term enhancements on each count. Second, we address whether the trial court correctly ordered that the indeterminate sentence as to count 3, firearm possession by a felon, be served concurrently. In addition to the matters discussed in the unpublished portion of this opinion, we modify the judgment and, upon issuance of the remittitur, the sentencing court is to exercise its discretion and either impose on every count the appropriate section 667.5, subdivision (b) one-year prior prison term enhancements or strike them pursuant to section 1385, subdivision (a) as to all or some of the counts. For reasons we shall explain, the number of possible one-year enhancements will depend on

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

whether the current offense is a serious felony. Second, we conclude the trial court had the discretion to, as it did, impose a concurrent term on count 3, the felon in possession of a firearm conviction.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Offenses

#### 1. January 19, 2006 crimes—counts 4, 5, and 6

On January 19, 2006, Maria Velez-Jimenez, accompanied by an aunt, drove a 2003 Chevrolet Astro van to the El Super supermarket on Cesar Chavez Avenue in East Los Angeles at approximately 3:30 p.m. Once at the market, they entered the store and shopped. Ms. Velez-Jimenez's aunt remained in the store paying for the purchases. Ms. Velez-Jimenez walked to the van with the bags of groceries. Ms. Velez-Jimenez opened the driver's side door of the van and placed some of the bags inside. As Ms. Velez-Jimenez bent down to get the other bags, she was surprised by defendant, who had stepped between her and the ajar door. Defendant pointed a black handgun at Ms. Velez-Jimenez's stomach. Defendant told Ms. Velez-Jimenez in Spanish not to scream. Defendant told Ms. Velez-Jimenez to give him the keys, her purse, and her gold necklace. Defendant also told Ms. Velez-Jimenez not to call the police because he had her documents. Ms. Velez-Jimenez's purse contained her wallet, phone, identification, driver's license, Social Security card, and $100. Ms. Velez-Jimenez was very frightened by the gun. Ms. Velez-Jimenez gave defendant all of the items he demanded because she had no choice but to comply. After she gave her belongings to defendant, Ms. Velez-Jimenez complied with his order to turn around. Ms. Velez-Jimenez had been face to face with defendant until that time. Defendant took all of the items and got into the Astro van. Defendant drove away in the Astro van.

None of Ms. Velez-Jimenez's personal property or money was ever returned to her. The van was recovered approximately one week after the incident. Ms. Velez-Jimenez later identified defendant as her assailant from a photographic lineup. On the page where defendant's photo appeared, Ms. Velez-Jimenez wrote, "Because when I was removing my necklace, I saw him face to face and the gun was in my stomach."

#### 2. January 24, 2006 crimes during the morning—counts 7, 8, and 9

At approximately 11:00 a.m. on January 24, 2006, Adela Munoz-Gonzalez drove to the same El Super market on Cesar Chavez Avenue in her Mazda

automobile. Ms. Munoz-Gonzalez parked her car and went into the market. After making some purchases, Ms. Munoz-Gonzalez returned to her car. As Ms. Munoz-Gonzalez opened the driver's side door, defendant approached her, stuck a gun in her stomach, and demanded her keys. Ms. Munoz-Gonzalez was terrified. Defendant spoke in Spanish. Initially, Ms. Munoz-Gonzalez put her hand that held her keys behind her so that defendant could not take them. Ms. Munoz-Gonzalez began yelling for help. Defendant grabbed the keys from her hand and drove off in Ms. Munoz-Gonzalez's car. Ms. Munoz-Gonzalez's car was returned to her approximately one week later.

Los Angeles County Sheriff's Deputy Ricardo Pedroza was on patrol on January 24, 2006. At approximately 11:00 a.m., Deputy Pedroza received a call from the Los Angeles County Police regarding a carjacking. The Los Angeles County Police officers had been flagged down by Ms. Munoz-Gonzalez. Deputy Pedroza spoke to Ms. Munoz-Gonzalez in Spanish. Ms. Munoz-Gonzalez, who was very upset, described her assailant as Latino, approximately 30 to 35 years old, who stood approximately five feet, eight inches tall, and weighed approximately 160 pounds. The man had short black hair, brown eyes, a mustache, and a dark complexion.

3. January 24, 2006 crimes in the afternoon—counts 1, 2, and 3

At approximately 12:30 p.m. on January 24, 2006, Ediberta Sosa-Gonzalez and Celeste Blandon were walking on the sidewalk on Santa Anita Avenue in Arcadia. Each woman had a child in a stroller. As they approached Santa Anita Avenue and Kristi Court, Ms. Sosa-Gonzalez saw a gray four-door "Nissan-type" automobile near the curb. The automobile was later identified by both women as the car in exhibits Nos. 2A through C, which depicted Ms. Munoz-Gonzalez's Mazda. Ms. Sosa-Gonzalez saw a man opening the trunk of the car. Shortly thereafter, Ms. Sosa-Gonzalez and Ms. Blandon heard defendant behind them say, "Do not move, do not yell, and give me everything you have." Both women turned around to see defendant pointing a black revolver at Ms. Sosa-Gonzalez's ribcage. Ms. Sosa-Gonzalez felt the gun against her clothing. Ms. Sosa-Gonzalez was fearful about her own safety and that of the children. Ms. Sosa-Gonzalez's three-year-old daughter was wearing gold earrings and a bracelet. Ms. Sosa-Gonzalez feared that her daughter would yell. Ms. Blandon also feared that defendant would remove her infant's gold earrings. Both women identified the gun marked as exhibit No. 3 at trial as identical to the one used by defendant.

Ms. Blandon removed her gold hoop earrings and placed them in defendant's outstretched hand. Ms. Blandon identified a pair of earrings at trial as the ones defendant took from her. Ms. Sosa-Gonzalez was wearing four rings. However, she was only able to remove two of them, which she gave to defendant. Defendant removed a chain from Ms. Sosa-Gonzalez's neck. Defendant removed Ms. Sosa-Gonzalez's purse, which was hanging from the stroller. The purse contained six or seven $1 bills. Ms. Sosa-Gonzalez identified these items at trial as those taken from her by defendant. After taking the women's belongings, defendant got into the gray car, made a U-turn, and drove away. Ms. Sosa-Gonzalez was able to see the license number on the car as defendant drove away. Thereafter, Ms. Sosa-Gonzalez and Ms. Blandon went to a nearby grocery store to seek help. Both Ms. Sosa-Gonzalez and Ms. Blandon were very scared. A security guard telephoned the police. Ms. Sosa-Gonzalez gave the license plate number to responding police officers.

At approximately 12:48 p.m. on January 24, 2006, El Monte Police Officer Nicholas Stratis was advised that an armed robbery occurred about two miles away in the nearby city of Arcadia. Officer Stratis was advised that a 1980's model gray car was involved in the robbery, was given a partial license plate number and told the direction in which the automobile was travelling. Officer Stratis believed the car might be headed in his direction. Officer Stratis then saw a gray 1980's model car approaching driven by a Hispanic man. Officer Stratis looked at the rear license plate of the car and called the number into the dispatcher. Officer Stratis immediately learned the car had been stolen. Officer Stratis advised the dispatcher and other units about the direction the car was travelling.

Officer Stratis got on his motorcycle and drove in the direction the gray Mazda had gone. As he approached the gray car, Officer Stratis noticed other police cars had joined him. The police officers illuminated their lights and stopped the car. Shortly thereafter, three additional police cars arrived. The officers drew their guns and ordered defendant out of the car. Defendant walked backwards toward the police cars. Defendant was ordered to place his hands behind his head and interlock his fingers and go down to his knees. Officer Mark Snook grabbed defendant's hands. Defendant said he had a gun in the right pocket of his jacket. Officer Snook removed a loaded black revolver from defendant's pocket. Officer Snook also found a necklace, a pair of earrings, a ring, and seven $1 bills in defendant's pocket.

El Monte Police Officer Eric Dominguez took part in the stop of the Mazda driven by defendant. Officer Dominguez took custody of defendant while the

other officers conducted the investigation. During that time, defendant asked Officer Dominguez what was going on. Defendant referred to the Mazda, stating, "I jacked that in East L.A." Defendant also said that he considered shooting it out with the officers. However, when he saw how many officers were present and the number of guns and rifles pointed at him, he decided to cooperate.

Ms. Blandon and Ms. Sosa-Gonzalez were driven to where defendant was arrested. Ms. Blandon positively identified defendant in a field showup. At trial Ms. Blandon stated, "It's the same man," referring to defendant who was in the courtroom. A few days later at the Arcadia police station, Ms. Blandon identified the earrings taken from her. Ms. Sosa-Gonzalez also identified defendant and the car he drove at the location where he was detained. An officer also showed Ms. Sosa-Gonzalez a ring and chain, which she identified as part of the jewelry that defendant had taken from her. Ms. Sosa-Gonzalez positively identified defendant at trial as well.

## B. Sentencing

This is an unusual case because the trial court initially set forth a tentative sentence at a November 14, 2007 hearing after denying several posttrial motions. The trial court explained that tentative ruling as follows: "The three possibilities are term, three times the traditional sentence for the current crime, a term of 25 years of a traditional sentence, which includes enhancements, the greatest minimum term must be selected. Enhancements are not included and enhancements are not triple. Count 4 and count 7, exempt for those the greatest is 25 years for carjacking determines the upper term is nine years, three times nine is 27. This is option one. Option 2 is 25 to life. Option 3 is the traditional sentence, which in this matter would be the high term of nine years, plus 10 years for the firearm, plus 10 years for the two prior convictions, and three years for the priors under [Penal Code section] 667.5, subsection (b). But since two of these are used under [Penal Code section] 667, subsection (a), they will not be used again under 667(a). Thus the total is nine, plus 10, plus 10, plus three, for a total of 32-to-life on count 4. Since the court is required to set the greatest term, option 3 is selected. Therefore, the base term on count 4 is 32 years-to-life. [¶] As to count 7, since the status enhancement under Penal Code 667(a) and 667.5(b) can only be used once for the sentence, the sentence is 25-to-life, plus 10 years for the firearm, for a total on count 7 of 35 years to life. [¶] As to count 1, second degree robbery, violation of Penal Code section 211, the minimum sentence is 25 years to life, plus 10-year enhancement for the use of the firearm, for a total of 35-to-life. [¶] Same sentence on count 2. [¶] As to count 3, a violation of 12021, subsection (a)(1), the sentence is 25 years to life. [¶] As to count 5, grand theft of an auto, violation of 487(d)(1), sentence is 25 years to life, plus 10 years for firearm, so 35 years to life on

count 5. However, count 5 is stayed pursuant to 654. [¶] As to count 6, unlawful driving of a car in violation of [Vehicle Code] section 10851(a), sentence is 25 years to life, plus the 10, total sentence on that count is 35-to-life. That, as well, is stayed pursuant to 654. [¶] Count 8, grand theft auto, [Penal Code section] 487(d)(1), 25-to-life, plus 10 years, so 35-to-life on that count, stayed, as well, pursuant to 654. [¶] As to count 9, unlawful driving of a car, pursuant to 10851, subsection (a), 25-to-life, plus 10 years, so 35-to-life, stayed pursuant to 654. [¶] The total sentence in this case for all the counts is 162 years to life."

However, at the actual sentencing hearing on November 21, 2007, the trial court modified its tentative ruling in various respects. The trial court discussed the holding of *People v. Misa* (2006) 140 Cal.App.4th 837, 846–847 [44 Cal.Rptr.3d 805] noting: "I find that this case makes it very clear. . . . [O]ur case, is a completely indeterminate tentative sentencing case with all the counts, so we are looking at a case where *Misa* would be most applicable because of the fact that they're all indeterminate sentencing." The trial court then orally pronounced the judgment: "[B]ased on the case I came up with the same calculations for count 1, exact same. And for count 2, the 211, would be 25 to life, plus 10 for the gun, plus 10 for the two priors pursuant to 667, same goal, 45-to-life. Third count, even though [the prosecutor] has argued it should be concurrent, the number will come up differently because we have a 12021(a)(1), 25-to-life, 10 for the 667, which makes it 35-to-life. For 4, the 215, it would be nine, which is the highest term, 10 for the gun case, 10 for the two priors, three for the 667 prior prison, 32-to-life. 5 would be the same, 25-to-life, 10 for the gun, 10 for two priors, 45 to life. 6 would be 10 for the gun, 10 for the priors. 5 and 6 remain stayed. [Seven], for 215, once again, is the same as count 4. Count 8 is 25-to-life, plus 10 for the gun, plus 10 for priors, 45-to-life. [¶] [Nine], the 10851(a), and we have to remember that, pursuant to, I think it was both 1170.12 and 667, any felony where a gun is used is a straight 25-to-life with the priors. So it's 25-to-life, 10 for the gun, and 10 for the priors, 45-to-life. Counts 8 and 9, again, are stayed." The trial court later summarized the sentence as follows: "Count 1, 45-to-life. Count 2, 45-to-life. [Three], 35-to-life. [Four], 32-to-life. Count 5, 45. Count 6, 45. [Seven], 32. Count 8, 45. Count 9, 45-to-life. Counts 5, 6, 8 and 9 are stayed pursuant to [Penal Code section] 654. And because [the prosecutor] has agreed and there's no dispute that count 3 should run concurrent pursuant to [defense counsel's] request, that now makes it 189-to-life. It's 154-to-life. All other provisions of my tentative ruling are adopted and made the judgment herein."

## III. DISCUSSION

### A. Prior Prison Term Enhancements

The jury found that defendant had served five prior prison terms resulting from the following convictions on the indicated dates: on July 1, 1985, grand theft in case No. A766429; on March 28, 1988, robbery in case No. A965651; on September 28, 1989, grand theft in case No. BA001055; on October 28, 1993, robbery in case No. BA083282; and on January 26, 2001, burglary in case No. VA060294. As best we can determine, the trial court orally imposed prior prison term enhancements on counts 4 and 7 but not on the remaining indeterminate sentences. The trial court did not orally strike any of the prior prison term enhancements. Nor does the record contain the statement of reasons for striking any prior prison terms set forth in "an order entered upon the minutes" as required by section 1385, subdivision (a). (*People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 531 [53 Cal.Rptr.2d 789, 917 P.2d 628]; *People v. Orin* (1975) 13 Cal.3d 937, 944 [120 Cal.Rptr. 65, 533 P.2d 193].)

The Attorney General argues that the sentencing court had an obligation to either impose or strike the prior prison term findings on each count. In *People v. Williams* (2004) 34 Cal.4th 397, 401–405 [19 Cal.Rptr.3d 619, 98 P.3d 876], our Supreme Court held that a section 667, subdivision (a) prior serious felony enhancement must be applied to every indeterminate term imposed pursuant to section 667, subdivision (e)(2)(A) and section 1170.12, subdivision (c)(2)(A). Our Supreme Court explained that its holding in *People v. Tassell* (1984) 36 Cal.3d 77, 89–92 [201 Cal.Rptr. 567, 679 P.2d 1][2] which held a prior conviction enhancement may be applied only once in a determinate sentencing case did not apply in the indeterminate context where the defendant received an enhanced sentence because he had previously been convicted of two violent or serious felonies: "In *People v. Tassell*[, *supra*,] 36 Cal.3d 77 . . . , this court held that when imposing a *determinate* sentence on a recidivist offender convicted of multiple offenses, a trial court is to impose an enhancement for a prior conviction only once to increase the aggregate term, and not separately to increase the principal or subordinate term imposed for each new offense. [Citation.] Here, the Court of Appeal concluded that *Tassell*'s holding does not apply to multiple *indeterminate* third strike sentences imposed under the 'Three Strikes and You're Out Law' [citations]. We agree that *Tassell* is not controlling in this different context, and that a prior

---

[2] As our Supreme Court explained in *Williams*, the *Tassell* opinion had been overruled on an unrelated point in *People v. Ewoldt* (1994) 7 Cal.4th 380, 401 [27 Cal.Rptr.2d 646, 867 P.2d 757]. (*People v. Williams, supra*, 34 Cal.4th at p. 400, fn. 1.)

conviction enhancement may be added to the third strike sentence for each new offense." (*People v. Williams, supra*, 34 Cal.4th at p. 400, fns. omitted.) Our Supreme Court further noted that: consecutive sentencing in a determinate case was controlled by section 1170.1; section 1170.1, the provision construed in *Tassell*, did not apply to the sentencing of a recidivist subject to an indeterminate maximum term pursuant to sections 667, subdivisions (b) through (i) and 1170.12; and thus *Tassell* was not controlling authority in the case of an indeterminate sentence. (*People v. Williams, supra*, 34 Cal.4th at p. 402; *People v. Misa, supra*, 140 Cal.App.4th at pp. 845–846.)

In *People v. Misa, supra*, 140 Cal.App.4th at page 846, our colleague, Associate Justice James A. McIntyre, synthesized the holding of *Williams* in the context of a nonstrikeable section 667, subdivision (a) prior serious felony conviction: "The court went on to conclude that based on the language of section 667, subdivision (e) indicating that the increased penalties for second and third strike offenses were to be imposed 'in addition to any other enhancement or punishment provisions which may apply' and the requirement that a third strike sentence must 'be served consecutive to any other term of imprisonment for which a consecutive term may be imposed by law,' the five-year enhancement for a prior conviction provided for in section 667, subdivision (a) was required to be imposed as to each qualifying felony of which the defendant (in that case, a third striker) was currently convicted. (§ 667, subd. (e); *Williams, supra*, 34 Cal.4th at p. 404.)"

Further, in *Williams*, our Supreme Court examined the origin of section 667, subdivision (a) which was adopted in 1982 as part of Proposition 8: "The five-year enhancement under section 667(a) for a prior serious felony conviction was added as part of 'a statutory and constitutional scheme enacted by the voters in 1982 as part of Proposition 8.' (*People v. Jones* (1993) 5 Cal.4th 1142, 1146 [22 Cal.Rptr.2d 753, 857 P.2d 1163].) The voters' intent 'was to increase sentences for recidivist offenders.' (*Id.* at p. 1147.) Adding the five-year enhancement separately to the third strike sentence for each new serious felony conviction is not inconsistent with this intent." (*People v. Williams, supra*, 34 Cal.4th at p. 404; see *People v. Misa, supra*, 140 Cal.App.4th at pp. 846–847.)

As can be noted, *Williams* and *Misa* hold that in cases where multiple indeterminate terms are imposed, all section 667, subdivision (a) five-year serious felony enhancements must be imposed on every count. The issue is slightly different here—must section 667.5 prior prison term enhancements be imposed on every indeterminate count? A crucial distinction exists between a section 667, subdivision (a) serious felony conviction finding and a section 667.5, subdivision (b) prior prison term enhancement apart from their elements and the duration of incarceration. A five-year section 667,

subdivision (a) prior serious felony conviction enhancement may not be stricken pursuant to section 1385, subdivision (a) or any other provision of law. (§ 1385, subd. (b) ["This section does not authorize a judge to strike any prior conviction of a serious felony for purposes of enhancement of a sentence under Section 667."]; *People v. Wilson* (2002) 95 Cal.App.4th 198, 201 [115 Cal.Rptr.2d 355] ["section 1385, subdivision (b) expressly prohibits trial courts from utilizing . . . 1385 to strike prior serious felony conviction enhancements under . . . section 667, subdivision (a)"].) By contrast, a section 667.5, subdivision (b) prior prison term enhancement may be stricken pursuant to section 1385, subdivision (a). (*People v. Bradley* (1998) 64 Cal.App.4th 386, 395–396 [75 Cal.Rptr.2d 244]; see *People v. McCray* (2006) 144 Cal.App.4th 258, 267 [50 Cal.Rptr.3d 343].)

As noted, the trial court neglected to either orally impose or strike any prior prison term enhancements as to counts 1, 2, 3, 5, 6, 8, or 9 pursuant to section 1385, subdivision (a). Thus, at the very least, upon remittitur issuance, the trial court must exercise its discretion and either impose or strike the section 667.5, subdivision (b) prior prison term enhancements pursuant to section 1385, subdivision (a). The question though is whether the section 667.5, subdivision (b) prior prison term enhancements must be imposed as to all or some of the counts or stricken pursuant to section 1385, subdivision (a) on every indeterminate sentence. Consistent with the analysis in *Williams* and *Misa*, we conclude the trial court was required to impose the section 667.5, subdivision (b) prior prison term enhancements or strike them in whole or in part pursuant to section 1385, subdivision (a). Section 667.5, subdivisions (a) and (b) contain mandatory language, which requires the additional terms be imposed on every count.[3] The enhancement language in section 667.5 is mandatory unless the additional term is stricken. (*People v. Langston* (2004) 33 Cal.4th 1237, 1241 [17 Cal.Rptr.3d 596, 95 P.3d 865]; *People v. Johnson* (2006) 145 Cal.App.4th 895, 908, fn. 20 [51 Cal.Rptr.3d 893].) Further, sections 667, subdivision (a) and 667.5 have the same purpose—increasing the duration of prison terms for recidivists. (*People v. Williams, supra,* 34 Cal.4th at p. 404 ["The voters' intent 'was to increase

---

[3] Section 667.5, subdivisions (a) and (b) state: "(a) Where one of the new offenses is one of the violent felonies specified in subdivision (c), in addition to and consecutive to any other prison terms therefor, the court shall impose a three-year term for each prior separate prison term served by the defendant where the prior offense was one of the violent felonies specified in subdivision (c). However, no additional term shall be imposed under this subdivision for any prison term served prior to a period of 10 years in which the defendant remained free of both prison custody and the commission of an offense which results in a felony conviction. [¶] (b) Except where subdivision (a) applies, where the new offense is any felony for which a prison sentence is imposed, in addition and consecutive to any other prison terms therefor, the court shall impose a one-year term for each prior separate prison term served for any felony; provided that no additional term shall be imposed under this subdivision for any prison term served prior to a period of five years in which the defendant remained free of both prison custody and the commission of an offense which results in a felony conviction."

sentences for recidivist offenders.' "]; *People v. Fielder* (2004) 114 Cal.App.4th 1221, 1229 [8 Cal.Rptr.3d 247] [the purpose of § 667.5 was " 'increasing the punishment incurred by repeat offenders' "].) Both sections 667, subdivision (a) and 667.5 are subject to article I, section 28, subdivision (f) of the California Constitution.[4] (*People v. Jones, supra*, 5 Cal.4th at p. 1149; *People v. Prather* (1990) 50 Cal.3d 428, 440 [267 Cal.Rptr. 605, 787 P.2d 1012].) The failure to impose a five-year section 667, subdivision (a) prior serious felony conviction enhancement is a jurisdictional error which may be corrected for the first time on appeal. (*People v. Dotson* (1997) 16 Cal.4th 547, 554, fn. 6 [66 Cal.Rptr.2d 423, 941 P.2d 56]; *People v. Purata* (1996) 42 Cal.App.4th 489, 498 [49 Cal.Rptr.2d 664].) In a similar vein, the failure to either impose or strike a section 667.5 prior prison term enhancement pursuant to section 1385, subdivision (a) is a jurisdictional error which may be corrected for the first time on appeal. (*In re Renfrow* (2008) 164 Cal.App.4th 1251, 1254 [79 Cal.Rptr.3d 898]; *People v. Bradley, supra*, 64 Cal.App.4th at p. 391.) More to the point, for the same reasons discussed in *Williams* and *Misa* concerning a section 667, subdivision (a) five-year enhancement, neither section 1170.1 nor any other statute requires a section 667.5, subdivision (b) prior prison term enhancement be applied only once when a defendant receives multiple indeterminate terms.

However, once the remittitur issues, there remains the issue of how many prior prison term enhancements are potentially applicable to each count. The answer is that it depends on whether the present offense is a serious felony within the meaning of section 1192.7, subdivision (c). For example, in count 1, defendant was convicted of robbery, a serious felony. (§ 1192.7, subd. (c)(19); see *People v. McGee* (2006) 38 Cal.4th 682, 694 [42 Cal.Rptr.3d 899, 133 P.3d 1054].) Defendant was found to have previously been convicted of two serious felonies, two prior robberies. (§ 1192.7, subd. (c)(18); see *People v. McGee, supra*, 38 Cal.4th at p. 694.) Each of these section 667, subdivision (a) serious felonies also served as the basis of two separate prior prison term findings. As to count 1, the prior prison term enhancements for these two serious offenses may not be imposed. This is because the two section 667, subdivision (a) five-year enhancements must be imposed and thus may not also be the subject of prior prison term enhancements resulting from the same convictions. (*People v. Jones, supra*, 5 Cal.4th at pp. 1149–1153; *People v. Nichols* (1994) 29 Cal.App.4th 1651, 1659 [35 Cal.Rptr.2d 478].) As to count 1, that leaves three other section 677.5, subdivision (b) one-year prison term findings, the July 1, 1985 and September

---

[4] Article I, section 28, subdivision (f) of the California Constitution states, "Use of Prior Convictions. Any prior felony conviction of any person in any criminal proceeding, whether adult or juvenile, shall subsequently be used without limitation for purposes of impeachment or enhancement of sentence in any criminal proceeding. When a prior felony conviction is an element of any felony offense, it shall be proven to the trier of fact in open court."

28, 1989 grand theft convictions and the January 26, 2001 burglary conviction. In count 1, upon remittitur issuance, the decision to be made by the trial court is whether to impose or strike the three prior prison terms arising from defendant's grand theft and burglary convictions. The decision to strike or impose the prior prison terms as to count 2, the robbery conviction, is the same. Thus, when deciding to strike or impose the prior prison term enhancements as to count 2, the trial court is to proceed in the same manner as in count 1.

Defendant has also been convicted of grand theft in counts 5 and 8 and unlawful taking of an automobile in counts 6 and 9. Each of these counts is a serious felony because defendant was found to have personally used a firearm in its commission. (§ 1192.7, subd. (c)(8).) The trial court shall proceed in the same manner as in counts 1 and 2 when deciding to strike or impose the three prior prison term enhancements. (§ 667.5, subd. (b).)

By contrast, count 3 is not a serious felony. No section 12022.53 or 12022.5 firearm use findings were returned as to count 3. Section 12021, subdivision (a) is not listed in section 1192.7, subdivision (c). Thus, count 3 is not a serious felony. (*People v. Prieto* (2003) 30 Cal.4th 226, 276 [133 Cal.Rptr.2d 18, 66 P.3d 1123]; cf. *People v. Briceno* (2004) 34 Cal.4th 451, 465 [20 Cal.Rptr.3d 418, 99 P.3d 1007] [§ 12021, subd. (a) is a serious felony when it is enhanced pursuant to § 186.22, subd. (b)(1)].) Therefore, no section 667, subdivision (a)(1) five-year prior conviction enhancement applies to count 3. The section 667, subdivision (a)(1) five-year prior conviction enhancement only applies when the current offense is a serious felony listed in section 1192.7, subdivision (c). (*People v. Briceno, supra,* 34 Cal.4th at p. 458; *People v. Neely* (2004) 124 Cal.App.4th 1258, 1262 [22 Cal.Rptr.3d 274].) Accordingly, all of the five section 667.5, subdivision (b) one-year enhancements apply to count 3. Once the remittitur issues, the trial court is to exercise its discretion to impose or strike all or some of the section 667.5, subdivision (b) enhancements as to cout 3.

## B. Concurrent Sentence on Count 3

### 1. Overview

As to count 3, the firearm possession by a felon charge, the trial court imposed a concurrent 35-year-to-life sentence. We asked the parties to brief the issue of whether the count 3 firearm possession by a felon indeterminate sentence should be either stayed pursuant to section 654, subdivision (a) or served consecutively rather than concurrently as required by sections 667, subdivision (c)(6) and 1170.12, subdivision (a)(6). We conclude the trial court had the discretion to impose a concurrent sentence on count 3.

### 2. Defendant's section 654, subdivision (a) argument

As noted, count 3 involves defendant's possession of a firearm on January 24, 2006. Briefly stated, the scenario leading up to defendant's January 24, 2006 arrest by El Monte police officers while in possession of the firearm was as follows. On January 19, 2006, defendant carjacked the Astro van from Ms. Velez-Jimenez as charged in counts 4, 5, and 6. Before 11:00 a.m. on January 24, 2006, defendant carjacked Ms. Munoz-Gonzalez's Mazda as charged in counts 7, 8, and 9 from the El Super market in East Los Angeles. At approximately 12:30 p.m. on January 24, 2006, defendant drove Ms. Munoz-Gonzalez's Mazda to Arcadia where he robbed Ms. Sosa-Gonzalez and Ms. Blandon. At approximately 12:48 p.m. Officer Stratis of the El Monte Police Department was advised of the robbery of Ms. Sosa-Gonzalez and Ms. Blandon two miles away in Arcadia. Officer Stratis followed the stolen Mazda driven by defendant until officers arrived and a stop could be effectuated. After defendant was removed from Ms. Munoz-Gonzalez's stolen Mazda, he was searched. El Monte Officer Snook found a firearm in defendant's pocket. Defendant admitted he was considering initiating a firefight with the officers. However, too many officers who participated in the arrest were pointing their guns and rifles at him and defendant decided not engage in a firefight.

Defendant argues that count 3 should be stayed pursuant to section 654, subdivision (a).[5] Defendant reasons that since the firearm was used in the Arcadia robberies of Ms. Sosa-Gonzalez and Ms. Blandon, it could not be separately punished by a concurrent sentence for firearm possession by a previously convicted felon when Officer Snook removed the handgun in El Monte. We review section 654, subdivision (a) multiple sentencing issues for substantial evidence. (*People v. Coleman* (1989) 48 Cal.3d 112, 162 [255 Cal.Rptr. 813, 768 P.2d 32]; see *People v. Osband* (1996) 13 Cal.4th 622, 710–711 [55 Cal.Rptr.2d 26, 919 P.2d 640].) The trial court has broad latitude in determining whether section 654, subdivision (a) applies in a given case. (*People v. Hutchins* (2001) 90 Cal.App.4th 1308, 1312 [109 Cal.Rptr.2d 643]; *People v. Herrera* (1999) 70 Cal.App.4th 1456, 1466 [83 Cal.Rptr.2d 307].) In conducting the substantial evidence analysis we view the facts in the following fashion: "We must 'view the evidence in a light most favorable to the respondent and presume in support of the order the existence of every fact the trier could reasonably deduce from the evidence. [Citation.]' (*People v. Holly* (1976) 62 Cal.App.3d 797, 803 [133 Cal.Rptr. 331].)" (*People v. McGuire* (1993) 14 Cal.App.4th 687, 698 [18 Cal.Rptr.2d 12]; see also

---

[5] Section 654, subdivision (a) states, "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision."

*People v. Green* (1996) 50 Cal.App.4th 1076, 1085 [58 Cal.Rptr.2d 259].) Multiple criminal objectives may divide those acts occurring closely together in time. (*People v. Hicks* (1993) 6 Cal.4th 784, 788–789 [25 Cal.Rptr.2d 469, 863 P.2d 714]; *People v. Harrison* (1989) 48 Cal.3d 321, 335–336 [256 Cal.Rptr. 401, 768 P.2d 1078].) Concurrent sentences can violate section 654, subdivision (a). (*People v. Miller* (1977) 18 Cal.3d 873, 887 [135 Cal.Rptr. 654, 558 P.2d 552] [where applicable, § 654 precludes imposition of concurrent sentence]; see also *People v. Britt* (2004) 32 Cal.4th 944, 951–954 [12 Cal.Rptr.3d 66, 87 P.3d 812].) Thus, implicit in the trial court's concurrent sentencing order is that defendant entertained separate intentions when he committed the robberies of Ms. Sosa-Gonzalez and Ms. Blandon in Arcadia and later when he was arrested in El Monte.

■ In cases involving firearms and multiple punishment issues, a section 654, subdivision (a) violation has been held to occur in an unusual factual scenario. Section 654, subdivision (a) has been held to apply when fortuitous circumstances place the firearm in the accused's hands only at the instant of the commission of another offense. (*People v. Bradford* (1976) 17 Cal.3d 8, 21–23 [130 Cal.Rptr. 129, 549 P.2d 1225]; *People v. Venegas* (1970) 10 Cal.App.3d 814, 818–821 [89 Cal.Rptr. 103].) For example in *Bradford*, after robbing a bank and driving away in a car, a state traffic officer stopped the defendant for speeding. The defendant then struggled with the officer. The defendant got control of the gun during the struggle and fired shots at the officer. In concluding section 654 barred multiple sentencing for the assault and weapons possession, our Supreme Court explained, "Defendant's possession of [the officer's] revolver was not 'antecedent and separate' from his use of the revolver in assaulting the officer." (*People v. Bradford, supra*, 17 Cal.3d at p. 22; see *People v. Ratcliff* (1990) 223 Cal.App.3d 1401, 1411–1412 [273 Cal.Rptr. 253].) In *Venegas*, the victim pulled a gun and a struggle ensued with the defendant. During the struggle, the defendant shot the victim. (*People v. Venegas, supra*, 10 Cal.App.3d at pp. 818–821.) The Court of Appeal held: "Here the evidence shows a possession only at the time defendant shot [the victim]. Not only was the possession physically simultaneous, but the possession was incidental to only one objective, namely to shoot [the victim]." (*Id.* at p. 821; see *People v. Ratcliff, supra*, 223 Cal.App.3d at p. 1412.) Our colleagues in Division Two of the Fourth Appellate District synthesized the holdings in *Bradford* and *Venegas* thusly, "From *Bradford* and *Venegas*, we distill the principle that if the evidence demonstrates at most that fortuitous circumstances put the firearm in the defendant's hand only at the instant of committing another offense, section 654 will bar a separate punishment for the possession of the weapon by an ex-felon." (*People v. Ratcliff, supra*, 223 Cal.App.3d at p. 1412; see *People v. Jones* (2002) 103 Cal.App.4th 1139, 1145 [127 Cal.Rptr.2d 319].) We agree with the foregoing analysis.

Here, defendant used the firearm in the 12:30 p.m. Arcadia robberies of Ms. Sosa-Gonzalez and Ms. Blandon. At approximately 12:48 p.m., Officer Stratis of the El Monte Police Department was advised of the Arcadia robberies which occurred two miles away. After being stopped in El Monte, defendant was arrested and the handgun was recovered. Defendant admitted he intended to use the firearm in a firefight with the officers but abandoned that plan because too many of them were present. The trial court could reasonably find this is not a situation involving the fortuitous possession of a handgun only at the moment of the commission of a crime apart from the mere act of firearm possession by a felon. Further, implicit in the trial court's concurrent sentencing order is the implied finding that defendant's intent in possessing the firearm during the Arcadia robberies was different from that when he was stopped in El Monte and he contemplated the shootout with the arresting officers.

### 3. Consecutive sentencing issue

■ The Attorney General argues that count 3 must be served consecutively. Section 667, subdivision (c)(6) states, "If there is a current conviction for more than one felony count not committed on the same occasion, and not arising from the same set of operative facts, the court shall sentence the defendant consecutively on each count pursuant to subdivision (e)." (See § 1170.12, subd. (a)(6).) Our Supreme Court has synthesized the effect of sections 667, subdivision (c)(6) and 1170.12, subdivision (a)(6) as follows: " 'By implication, consecutive sentences are not mandatory under subdivision (c)(6) if the multiple current felony convictions are "committed on the same occasion" or "aris[e] from the same set of operative facts." ' [Citation.]" (*People v. Deloza* (1998) 18 Cal.4th 585, 591 [76 Cal.Rptr.2d 255, 957 P.2d 945], quoting *People v. Hendrix* (1997) 16 Cal.4th 508, 512–513 [66 Cal.Rptr.2d 431, 941 P.2d 64].) Further, in *Deloza*, our Supreme Court described other aspects of sections 667, subdivision (c)(6) and 1170.12, subdivision (a)(6): the multiple punishment provisions of section 654, subdivision (a) are irrelevant in the context of such recidivist sentencing; the "same occasion" language in section 667.6, subdivision (c) applicable to sex offenses is not closely related and only marginally related to sentencing in cases such as this; the term " 'same occasion' refers at least to a close temporal and spatial proximity between the acts underlying the current convictions" although other factors may apply. (See *People v. Lawrence* (2000) 24 Cal.4th 219, 226–227 [99 Cal.Rptr.2d 570, 6 P.3d 228]; *People v. Deloza, supra*, 18 Cal.4th at pp. 594–599.)

We need not address the issue of whether the firearm possession was committed on the same occasion as any of the other offenses. Rather, there is substantial evidence the firearm possession, which occurred in connection

with every count, arose from the same set of operative facts. Our Supreme Court has described the "same set of operative facts test" as follows in the italicized portion of the following quotation: "If there are two or more current felony convictions 'not committed on the same occasion,' i.e., not committed within close temporal and spacial proximity of one another, *and 'not arising from the same set of operative facts,' i.e., not sharing common acts or criminal conduct that serves to establish the elements of the current felony offenses of which defendant stands convicted, then 'the court shall sentence the defendant consecutively on each count'* . . . ." (*People v. Lawrence, supra,* 24 Cal.4th at p. 233, some italics added.) To remove the multiple negatives from the quotation, if the offenses share "common acts or criminal conduct" that serve to establish the elements of the current offenses, then concurrent sentencing is an option. Applied to this case, if defendant's firearm possession shares common acts or criminal conduct with all of the other robberies, carjacking, and vehicle-theft-related counts, then the trial court had the discretion to impose a concurrent sentence.

Here, there is substantial evidence which supported the trial court's exercise of discretion to impose a concurrent term for firearm possession by a felon. In every other count, defendant was found to have used a firearm. Every other count involved defendant's use of a firearm to accomplish a robbery, carjacking, or vehicle-related theft. There is no evidence defendant possessed more than one gun when he committed the robberies, carjacking, and vehicle-theft-related crimes between January 19 and 24, 2006. Thus, every other count shares common acts or criminal conduct—possession of what the trial court could reasonably find was the same firearm by the same previously arrested felon. As a result, the trial court possessed the discretion to impose a concurrent sentence. We emphasize though that we are addressing only the second element of sections 667, subdivision (c)(6) and 1170.12, subdivision (a)(6) mandatory consecutive sentencing. The first element—the same occasion element—involves different considerations including the simultaneity or completion of the offenses and other factors. (*People v. Lawrence, supra,* 24 Cal.4th at p. 227, quoting *People v. Deloza, supra,* 18 Cal.4th at pp. 595–596 [" 'Given the close temporal and spatial proximity of defendant's crimes against the same group of victims, they were clearly committed on the "same occasion . . ." ' "].) The completion of a crime is often dispositive in terms of the same occasion element. But as to the second element, the "common acts or criminal conduct" element, as applied here, involves a common instrumentality utilized to commit every other crime. The trial court had the discretion to impose a concurrent sentence for firearm possession by a felon.

C., D.*

· · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·

## IV. DISPOSITION

The judgment of conviction is affirmed. The sentence is reversed and affirmed as specified in the body of this opinion. Upon remittitur issuance, the trial court is to proceed as specified in part III.D.4. of the body of this opinion.

Armstrong, J., and Kriegler, J., concurred.

On December 2, 2008, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied March 11, 2009, S169005.

---

*See footnote, *ante*, page 1550.