Filed 10/8/13  P. v. Viramontes CA2/6
## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>FRANK A. VIRAMONTES,<br><br>    Defendant and Appellant. | 2d Crim. No. B245414<br>(Super. Ct. No. KA096547-01)<br>(Los Angeles County) |

        Frank A. Viramontes appeals a judgment following conviction of robbery. (Pen. Code, § 211.)[1]  The jury found that he committed the crime to benefit a criminal street gang.  (§ 186.22, subd. (b)(1).)  Viramontes admitted he suffered a prior prison term.  (§ 667.5, subd. (b).)  The trial court sentenced Viramontes to 13 years in state prison, consisting of three years for the robbery and 10 years for the gang enhancement. (§§ 211, 186.22, subd. (b)(1)(C).)  The court stayed a one-year prior prison term enhancement.  We remand to the trial court to correct the sentence by either imposing or striking the one-year prior prison term enhancement, and otherwise affirm.

FACTUAL AND PROCEDURAL BACKGROUND

        Viramontes, Jacob Verdona, Albert Silvas, and Lydia Padilla are members of the Ford Maravilla street gang.  Verdona kept a gun for Viramontes, according to the

---

[1] All statutory references are to the Penal Code unless otherwise stated.

testimony of Verdona's girlfriend, Nasreen Garcia. Verdona kept it hidden under his grandmother's house.

Verdona and Garcia discovered the gun was missing. They suspected that Cheryl Mack and her boyfriend had taken it. Garcia told Viramontes that Mack had taken the gun. Viramontes told her he wanted it back and he asked Garcia to take him to Mack's house. Garcia drove, with Verdona in her car. Viramontes followed in another car with Silvas and Padilla.

Silvas and Padilla forced their way into Mack's house, tied up Mack's mother, and took a number of valuable objects. Viramontes waited outside and watched for police. After the robbery, Garcia drove Viramontes away. She pled no contest to being an accessory to the robbery after the fact.

In a recorded interview, Viramontes admitted that he stood by the door and watched for police during the robbery and that he carried a jewelry box to the car. He also admitted he was a member of Ford Maravilla.

Los Angeles Police Detective Jesse Lucero testified as a gang expert. He offered the opinion that the robbery was committed in association with, for the benefit of, and at the direction of the Ford Maravilla criminal street gang. He testified that Ford Maravilla's primary activities are vandalism, robbery, attempted robbery, extortion, carjacking, assault, vehicle theft, narcotic sales and transportation, attempted murder, and murder. He testified to predicate felonies by gang members, about which the prosecution presented documentary evidence. He testified that Viramontes, Silvas, and Padilla were members of Ford Maravilla. Lucero had been assigned to East Los Angeles gangs, including Ford Maravilla, since 1990, and had been assigned primarily to Ford Maravilla for the past two years. The investigating officer, Detective Scott Strong, also testified that he knew Silvas to be a member of Ford Maravilla.

2

## DISCUSSION

### *Sufficiency of Evidence to Support Gang Enhancement*

Viramontes contends that there is insufficient evidence that he committed the robbery to benefit a criminal street gang. (§§ 211, 186.22, subd. (b)(1).) We apply the usual standard of review in assessing whether the gang enhancement is supported by sufficient evidence. (*People v. Albillar* (2010) 51 Cal.4th 47, 59-60.) We view the evidence and draw all reasonable inferences therefrom in favor of the finding. (*Ibid*.) Although the evidence might support a contrary finding, we do not substitute our views for those of the trier of fact. (*Id*. at p. 60.)

Viramontes asserts there was insufficient evidence that a primary activity of the Ford Maravilla gang was commission of enumerated offenses because Detective Lucero did not identify the source of his knowledge that its members had committed the crimes he described. (Evid. Code, §§ 800, 801; *In re Daniel C.* (2011) 195 Cal.App.4th 1350, 1363-1364 [opinion evidence is insubstantial if not supported by facts in the record].) Lucero testified that he had more than 20 years of experience with East Los Angeles gangs, had been assigned to the Ford Maravilla gang since 2010, and had personally spoken with "50 plus" of that gang's approximately 90 members. His testimony was supported by sufficient foundation, unlike the expert in *In re Alexander L.* (2007) 149 Cal.App.4th 605, 611-612, who described no personal contacts with gang members or any other basis for his opinion concerning a gang's primary activities. Lucero's testimony provided sufficient evidence that Ford Maravilla's primary activity is the commission of enumerated offenses. (*People v. Gardeley* (1996) 14 Cal.4th 605, 620 [an opinion about primary activities was properly based on conversations with gang members, investigations of crimes committed by gang members, and information from colleagues].)

Viramontes also asserts that the crime was not gang related. He contends that he sought only to recover his personal property and that there was no evidence that his accomplices were gang members or that the gang had any claim to the gun. (*People*

3

*v. Livingston* (2012) 53 Cal.4th 1145, 1170 [gang enhancement only applies if the crime is gang related]; *People v. Rodriguez* (2012) 55 Cal.4th 1125, 1138 [not every crime committed by gang members is related to a gang].) But Viramontes committed the robbery in association with Verdona, Silvas, and Padilla, and sufficient evidence supports an inference that they relied on their common gang membership to commit the crime. (*People v. Albillar*, *supra*, 51 Cal.4th 47, 60.) Garcia testified that Silvas and Verdona were members of the Ford Maravilla gang. Lucero testified that Silvas, Verdona, and Padilla were members. Garcia testified that Verdona stored the gun for Viramontes and that gang members went as a group to recover it or to take property that would compensate for its loss. According to Mack's mother, the female robber (Padilla) told her that Cheryl Mack stole something "from us." Detective Lucero testified that stealing a gun from a gang member would be viewed by gang members as disrespect toward the gang and that failure to retaliate would cause Viramontes to lose status or to be disciplined by the gang. He also testified that a gang member such as Viramontes would only select other gang members to participate in a mission to retrieve a gun because he could rely upon them.

Viramontes contends that the testimony that Silva and Padilla were gang members was not competent because Garcia and Lucero did not identify the source of their knowledge. (Evid. Code, §§ 800, 801.) But Viramontes did not object at trial that the testimony lacked foundation. (*People v. Panah* (2005) 35 Cal.4th 395, 476 [incompetent evidence, received without objection at trial, takes on attributes of competent proof when considered upon the question of sufficiency of the evidence to support a finding].) Sufficient evidence supports the jury's findings that Viramontes committed the robbery "for the benefit of, at the direction of, or in association with" the Ford Maravilla gang. (§ 186.22, subd. (b)(1).)

The jury's finding that Viramontes committed the robbery "with the specific intent to promote, further, or assist in any criminal conduct by gang members" (§ 186.22, subd. (b)(1)) is supported by evidence that he selected known gang members to

4

accompany him and that he stood watch for them as they entered the house and robbed Mack's mother. (*People v. Albillar*, *supra*, 51 Cal.4th 47, 67 ["the statute requires only the specific intent to promote, further, or assist criminal conduct by *gang members*"].) Detective Lucero's testimony supported a finding that Viramontes and his fellow gang members committed the crime to restore the gang's respect after Cheryl Mack disrespected the gang by stealing a member's gun.

### *Prior Prison Enhancement*

The trial court erroneously stayed the one-year enhancement for a prior prison term. (§ 667.5, subd. (b).) The court shall strike the punishment, but not the enhancement. (Cal. Rules of Court, rule 4.428.) Viramontes admitted he served a prior prison term within the meaning of section 667.5, subdivision (b). The enhancement is mandatory unless stricken. (*People v. Langston* (2004) 33 Cal.4th 1237, 1241.) The error is jurisdictional. (*People v. Garcia* (2008) 167 Cal.App.4th 1550, 1562.)

### DISPOSITION

The trial court is directed to correct the sentence, the court's minutes, and the abstract of judgment to either impose or strike the one-year prior prison term enhancement. (§ 667.5, subd. (b).) On resentencing, the trial court shall forward the corrected abstract to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED.


GILBERT, P.J.

We concur:



YEGAN, J.



PERREN, J.

5

Juan Carlos Dominguez, Judge

Superior Court County of Los Angeles

_____

James R. Bostwick, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Paul M. Roadarmel, Jr., Scott A. Taryle, Supervising Deputy Attorneys General, for Plaintiff and Respondent.