Filed 8/11/16  P. v. Adams CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C076408 |
| Plaintiff and Respondent, | (Super. Ct. No. 13F00490) |
| v. | |
| JERRY TWOTUFF ADAMS, | |
| Defendant and Appellant. | |

A jury convicted defendant Jerry Twotuff Adams of carjacking (Pen. Code, § 215, subd. (a); count one),[1] second degree robbery (§ 211; count two), assault with a firearm (§ 245, subd. (a)(2); count three), and convicted felon in possession of a firearm (§ 29800, subd. (a)(1); count four).  The jury also found firearm allegations to be true. (§ 12022.53, subd. (b) [counts one and two]; § 12022.5, subds. (a) and (d) [count three].)

---

[1]     Undesignated statutory references are to the Penal Code.

1

In bifurcated proceedings, the court found a strike prior (§§ 667, subds. (b)-(i), 1170.12) and a prior felony conviction (§ 667, subd. (a)) to be true.

The court sentenced defendant to state prison for an aggregate term of 39 years eight months: the upper term of nine years, doubled for the strike prior, for carjacking (count one) plus a consecutive 10-year term for the firearm enhancement; a consecutive one-third the midterm or one year, doubled for the strike prior, for the robbery (count two) plus a consecutive one-third the midterm or three years four months for the firearm enhancement; a stayed term for the assault offense (count three) and firearm enhancement; a consecutive one-third the midterm or eight months, doubled for the strike prior, for being a convicted felon in possession of a firearm (count four); and a consecutive five-year term for the prior felony conviction.

Defendant appeals, contending section 654 barred punishment for the robbery (count two) and his possession of the firearm (count four). We disagree and affirm the judgment.

FACTS

At approximately 9:00 p.m. on January 21, 2013, Charles Ahmed, Jr., went to an apartment complex at 3181 Howe Avenue to deliver two Dominos pizzas and a two-liter container of soda to apartment 23. He parked his white Pontiac G6 that had a Dominos signage on top, left the car unlocked and the engine running so that the headlights would stay on and light his way, and started walking on the pathway to the apartment. When he was about 15 feet from the apartment, he heard footsteps behind him. When he turned around, he saw the barrel of a gun pointed at him within inches from his face. The assailant, later identified as defendant, ordered Ahmed to turn around and not look. Ahmed dropped the pizzas and soda, removed his cell phone and wallet from his pockets, and got down on the ground. Defendant ordered Ahmed to hug the wall. Defendant picked up Ahmed's cell phone, money bag, and wallet and jumped on Ahmed, shoving his knee into Ahmed's back and using the barrel of the gun to press Ahmed's head into

2

the dirt. Defendant demanded more, saying, "I know this isn't all you got. Give me all you got." Ahmed responded repeatedly that he had given defendant everything. Defendant hit Ahmed in the head with the pistol and ordered Ahmed to remove his sweater. Ahmed did so and defendant searched it. Ahmed heard someone pick up the pizza boxes and then a door to apartment 23 open. Ahmed heard footsteps going towards the apartment door and then someone threw the pizza boxes into the apartment. Defendant said to someone inside the apartment, "I'm robbin' this nigga." Ahmed looked up towards the apartment and defendant ran out, saying, "I told you not to look, you think I'm F'ing around with you?" Ahmed responded repeatedly, "No, I know you're serious." Defendant jumped on Ahmed, shoving his knee into Ahmed's back, and pistol whipped him on the back of his head. Defendant was wearing thick gloves. Ahmed heard sounds like the gun was being cocked and then the slide being pulled back. Placing the barrel of the gun behind Ahmed's head, defendant demanded, "Give me the rest of what you got. I know you got more money. Where you hiding it at?" Defendant ordered Ahmed to remove his clothes, including his shorts, shoes, and socks. Ahmed told defendant that there might be some change near the steering wheel of his car which was parked nearby. Ahmed heard someone else run towards his car. Defendant struck Ahmed a few more times with the gun and then placed the barrel against the back of his head, ordering Ahmed not to get up. Defendant ran towards Ahmed's car. Ahmed heard the car door close and his car speed away.

Ahmed waited about 90 seconds and then looked up. He saw no one around and his car gone. He got up and ran, noticing three or four children looking out the window of apartment 23. Ahmed was bleeding from his head and wearing only underwear. He ran across the apartment complex and started knocking on doors. After several people refused to let him inside, a resident went outside and let Ahmed call 911. About four to five minutes after the attack, Ahmed was able to contact law enforcement.

At approximately 9:14 p.m., Sergeant Kenny Lee heard the report from dispatch of a carjacking and saw the stolen white Pontiac stopped at a red light. Sergeant Lee made a U-turn to get behind the car and it ran the red light and sped off with the officer in pursuit. Defendant, the driver, drove off the road and onto the front lawn of a house near Edison Avenue and Horseshoe Drive, got out of the car and ran. The passenger, later identified as Ashley Nelson, also got out and ran.

At approximately 9:29 p.m., Officer Sam Lopez spoke with a woman who had called 911 to report a man jumping over her fence in a mobile home park on Auburn Boulevard. Officer Lopez and his partner Officer Wiseman saw defendant nearby walking down the street. The officers ordered defendant to lie down on the ground and he complied. When he was taken into custody, he was breathing somewhat heavily as if he had been running and there was a tear and some grass on his shirt. The officers found a small knife but not a firearm on defendant's person.

At approximately 9:40 p.m., Nelson was found near the Pontiac. Initially, she claimed she had been sleeping in the backyard of the residence, but about 30 minutes later, she admitted she had been a passenger in the Pontiac. She identified defendant in an in-field show-up as the man driving the Pontiac.

Ahmed identified defendant in an in-field show-up as well. Ahmed recognized defendant's clothing and his voice.

A search by police canines for a firearm was unsuccessful. The firearm defendant used in the robbery, assault, and carjacking was never found.

DISCUSSION

Defendant contends the trial court erroneously imposed consecutive sentences for robbery (count two) and possession of a firearm (count four), arguing that section 654 barred punishment for these two offenses. He claims the robbery and the carjacking were part of an indivisible course of conduct with a single objective to take property. He claims there is no evidence to support the finding that he possessed the firearm after the

4

robbery and carjacking.  We conclude that the trial court properly imposed consecutive sentences.

*Background*

At sentencing, defense counsel argued that section 654 barred punishment for robbery and the assault offenses, claiming it was the "same conduct" although "slightly separated in time."  The prosecutor argued consecutive sentencing was discretionary and appropriate given the circumstances for robbery and possession of a firearm.

In imposing a consecutive term for the robbery, the court found that the robbery "occurred at a different time and place" from the carjacking, commenting:  "You robbed the victim first.  And then at some later point in time [you] decided that wasn't enough.  So you made him strip.  And then you took his car.  You had a sufficient opportunity to pause and reflect and decide whether or not you wanted to continue your criminal conduct, which apparently you decided was in your best interest, and so you did."

In imposing a consecutive term for the possession offense, the court stated:  "With respect to Count 4, I find that your being a felon in possession of a firearm was a separate and distinct act that you took upon yourself that day.  You were armed prior to making contact with Mr. Ahmed, who's the victim in this matter.  And, therefore, in this Court's view that [offense] occurred at a different time and place and manner."

*Analysis*

Section 654, subdivision (a) provides in pertinent part:

"An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. . . ."

"Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor.  If all of the offenses were incident to one objective, the defendant may be

5

punished for any one of such offenses but not for more than one." (*Neal v. State of California* (1960) 55 Cal.2d 11, 19; *People v. Hensley* (2014) 59 Cal.4th 788, 828; *People v. Latimer* (1993) 5 Cal.4th 1203, 1208, 1216-1217; see *People v. Correa* (2012) 54 Cal.4th 331, 336 (*Correa*).)**2** "However, if the defendant harbored 'multiple or simultaneous objectives, independent of and not merely incidental to each other, the defendant may be punished for each violation committed in pursuit of each objective even though the violations share common acts or were parts of an otherwise indivisible course of conduct. [Citation.]' [Citations.]" (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143 (*Jones*).) In determining whether section 654 applies, the trial court exercises its discretion, and its findings will not be reversed on appeal if there is any substantial evidence to support them. (*Jones, supra*, at p. 1143.)

*Robbery*

Defendant argues that he attacked Ahmed with the single intent and objective of taking his property, his pizza, and his car. Defendant claims that had the car "not been running, the keys to the car would, no doubt, have been taken at the same moment as the pizza. It is only because the car was running with the keys in it that there was any break in time at all." He asserts there is no evidence to support the conclusion that he decided to take the car at a different time. We reject his argument.

A defendant may be convicted of both carjacking and robbery based on the same conduct but may not be punished for "the same act which constitutes a violation of both [section 215] and Section 211." (§ 215, subd. (c); *People v. Ortega* (1998) 19 Cal.4th

---

**2**     *Correa, supra,* 54 Cal.4th 331 disapproved the application of section 654 to multiple punishment for multiple violations of the same provision of law, concluding *Neal v. State of California's* footnote to the contrary (*Neal v. State of California, supra,* 55 Cal.2d at p. 18, fn. 1) was dictum (*Correa, supra,* at p. 344) but this "new rule" applied prospectively only. (*Id.* at pp. 344-345.)

686, 700.)  A defendant may be punished for both when the carjacking and robbery involve more than one objective.  (*People v. Green* (1996) 50 Cal.App.4th 1076, 1085.)

Here, the robbery and carjacking did not take place simultaneously and were not part of an indivisible course of conduct.  The trial court reasonably concluded that defendant's initial objective was to steal Ahmed's money.  Defendant was dissatisfied with the minimal amount of money Ahmed had and demanded more repeatedly ("Give me the rest of what you got.  I know you got more money.  Where you hiding it at?").  After searching Ahmed's sweater, defendant ordered Ahmed to remove his clothes down to his underwear.  Defendant was focused on obtaining more money.  Ahmed suggested there might be some change next to the steering wheel in his car parked nearby.  The trial court reasonably concluded that only after finding what little money Ahmed had did defendant entertain the new objective of taking Ahmed's car.  The trial court expressly found that defendant completed the robbery and had time to reflect and consider his actions before arriving at his new objective.  Defendant took Ahmed's money and the pizzas, entered the apartment and spoke to someone inside, and then returned to beat Ahmed in the head, telling him not to get up, and then taking his car.  Defendant's punishment for both the robbery and carjacking is consistent with the purpose underlying section 654 of ensuring that his punishment is commensurate with his culpability.  The trial court did not err in imposing a consecutive sentence for the robbery.

*Convicted Felon in Possession of a Firearm*

Citing *People v. Venegas* (1970) 10 Cal.App.3d 814 (*Venegas*), defendant argues that the evidence showed that his possession of the firearm occurred only at the time he robbed the victim and that there was no evidence that he possessed it after the robbery and carjacking.[3]  Defendant distinguishes *People v. Ratcliff* (1990) 223 Cal.App.3d 1401

---

[3]  Defendant also cited the original opinion in *People v. Manila* (2006) 138 Cal.App.4th 1459, which was subsequently modified (*People v. Manila* (2006)

(*Ratcliff*) where the evidence supported a finding that the defendant possessed a firearm before or after the offenses.

Relying on *Jones, supra,* 103 Cal.App.4th 1139, the People argue that the evidence supports a reasonable inference that defendant possessed the gun prior to the robbery. We agree with the People.

Whether a violation of section 29800, prohibiting a convicted felon from possessing a firearm, constitutes a divisible transaction from another offense in which defendant possessed or used a firearm depends upon the facts and circumstances of the case. "[S]ection 654 will not bar punishment for both firearm possession by a felon (§ 12021, subd. (a)(1) [now § 29800]) and for the primary crime of which the defendant is convicted" where the convicted felon "commits a crime using a firearm, and arrives at the scene already in possession of the firearm, [so that] it may reasonably be inferred that the firearm possession is a separate and antecedent offense, carried out with an independent, distinct intent from the primary crime."[4] (*Jones, supra*, 103 Cal.App.4th at p. 1141; *Ratcliff, supra,* 223 Cal.App.3d at pp. 1412-1414; *People v. Garcia* (2008) 167 Cal.App.4th 1550, 1565.)

*Jones, supra,* 103 Cal.App.4th 1139 held that section 654 did not bar punishment for both convicted felon in possession of a gun and shooting at an inhabited dwelling (§ 246) where the defendant must have possessed the firearm before he drove towards the victim's house at which the defendant fired several shots. (*Jones*, *supra*, at pp. 1142-1143, 1147-1148.)

---

139 Cal.App.4th 589), and granted review by the Supreme Court on September 20, 2006, and later dismissed on October 10, 2007. (*People v. Manila,* S144885.) *Manila* is not citable.

[4] The Legislature reorganized section 12000 et seq., the deadly weapons statutes. (Stats. 2010, ch. 711, introduction.) Effective January 1, 2011, and operative January 1, 2012, the prohibition contained in section 12021 is found in section 29800. (Stats. 2010, ch. 711, §§ 4, 6, 10.)

*Ratcliff, supra,* 223 Cal.App.3d 1401 held that punishment for both convicted felon in possession of a gun and two robberies was not barred by section 654 where the defendant's possession "continued before, during and after [the robberies]." (*Ratcliff, supra,* at pp. 1404, 1413.)

However, where the facts show that " 'fortuitous circumstances put the firearm in the defendant's hands only at the instant of the commission of another offense' " (*People v. Garcia, supra,* 167 Cal.App.4th at p. 1565; *Ratcliff, supra*, 223 Cal.App.3d at p. 1412), multiple punishment is barred by section 654. For example, in *People v. Bradford* (1976) 17 Cal.3d 8, the defendant shot at an officer several times with the gun defendant seized from the officer moments before the shooting and separate punishment for both convicted felon in possession of the firearm and the assault offense was barred by section 654. (*People v. Bradford, supra*, at pp. 13, 22.) And in *Venegas, supra,* 10 Cal.App.3d 814, section 654 barred punishment for both convicted felon in possession of a gun and assault with a deadly weapon with intent to commit murder where the defendant obtained the victim's gun during a barroom struggle shortly before he used it to shoot the victim. (*Venegas*, *supra*, at pp. 819, 821.)

Here, the trial court expressly found that defendant armed himself with the firearm prior to approaching Ahmed from behind. The court's finding is supported by the evidence. There is no evidence to support the theory that defendant just happened upon the gun during the offenses. Defendant's separate punishment for his possession of a firearm is consistent with the purpose underlying section 654 of ensuring that his punishment is commensurate with his culpability. "A felon who, for example, uses a gun to commit a burglary is more culpable than a felon who commits the same burglary without a gun, or than a felon who arms himself but does not commit any additional crimes." (*Jones, supra,* 103 Cal.App.4th at p. 1148.) The trial court did not err in imposing a consecutive sentence for the gun possession.

DISPOSITION

The judgment is affirmed.

                                        _____NICHOLSON_____, Acting P. J.

We concur:

_____BUTZ_____, J.

_____HOCH_____, J.

10