Filed 6/21/13  P. v. Lockett CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>      v.<br><br>LAMONT DEON LOCKETT,<br><br>    Defendant and Appellant. | F063515<br><br>(Super. Ct. Nos. F10904121 & F09906230)<br><br>**OPINION** |

-ooOoo-

### THE COURT*

APPEAL from a judgment of the Superior Court of Fresno County.  Mark W. Snauffer, Judge.

Jill M. Klein, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie Hokans and Clara M. Levers, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

*Before Wiseman, Acting P.J., Levy, J., and Kane, J.

Before his trial for stealing a pickup truck and other charges, Lamont Deon Lockett gave his attorney a handwritten declaration discussing several topics. One topic was that Lockett claimed he borrowed the truck from a man named James Fuller and had no knowledge that it was stolen. Another was that the attorney had failed to undertake any investigation of Fuller. Although the declaration did not state that Lockett wanted a new lawyer, the attorney interpreted it as a request for substitution of counsel. He therefore informed the court that he was making a *Marsden* motion on Lockett's behalf. (*People v. Marsden* (1970) 2 Cal.3d 118.) The court read the declaration and then questioned Lockett and his attorney outside the prosecutor's presence. Lockett did not tell the court he wanted a new lawyer. The court said, "I don't see this as a Marsden," and explained that the gist of both the declaration and Lockett's oral remarks was that he wanted to plead guilty to reduced charges, an option not then available. The court did not question Lockett or his attorney about the attorney's investigation, or lack of investigation, of a James Fuller, and no such witness was ever produced. The trial proceeded and Lockett was found guilty.

Lockett now argues that the court failed in its duty under *Marsden* when it made no inquiry about the attorney's investigation of Fuller. We disagree. To trigger the trial court's duty of inquiry under *Marsden*, a defendant must make some clear indication that he wants a new lawyer. Lockett never did this. It is true that Lockett's counsel stated that he was making a *Marsden* motion, which by definition is a request for substitution of counsel. This case is unusual, however, in that the trial court had before it a document written by the defendant that was the basis of defense counsel's belief that a *Marsden* hearing was warranted. The court read that document and saw that it did not ask for substitution of counsel; then it asked Lockett for an oral account of what he wanted, and Lockett did not ask for new counsel. Under these circumstances, the court properly concluded that, in spite of defense counsel's interpretation of the declaration, no request

2.

for substitution of counsel was genuinely before it and its duty of inquiry under *Marsden* was not triggered. There was no error.

This appeal includes a separate case in which Lockett pleaded guilty to resisting arrest and possessing drugs. In that case, the trial court imposed, but stayed execution of, three 1-year sentence enhancements based on prior prison terms. The parties agree that the proper procedure was to strike the enhancements, not stay them. We will order them stricken.

### *FACTUAL AND PROCEDURAL HISTORIES*

Case No. F09906230 was the case involving resisting arrest and possessing drugs.[1] On October 30, 2009, officers recognized Lockett, who was then on parole and wanted for exhibiting a firearm and being a felon in possession of a firearm. Lockett fled when the officers told him to stop, continued running after being tased, struggled after being tased again and pepper sprayed, and finally was handcuffed. On his person the officers found methamphetamine, cocaine base, marijuana, and a glass pipe. The district attorney filed an information, and on March 25, 2010, Lockett pleaded guilty to four counts: (1) possession of cocaine base, a felony (Health & Saf. Code, § 11350, subd. (a)); (2) possession of methamphetamine, a felony (Health & Saf. Code, § 11377, subd. (a)); (3) possession of marijuana, a misdemeanor (Health & Saf. Code, § 11357, subd. (b); and (4) resisting arrest, a misdemeanor (Pen. Code, § 148, subd. (a)(1)). The plea included Lockett's admission that he had three prior prison terms within the meaning of Penal Code section 667.5, subdivision (b).

Case No. F10904121 involved the stolen truck. At 11:45 a.m. on August 10, 2010, an undercover police officer in an unmarked car spotted Joseph Mendoza's blue Chevrolet pickup truck, which Mendoza had reported stolen on August 5. The officer followed the truck for several minutes, during which the driver made abrupt turns and

---

[1]The facts of this case are taken from the transcript of the preliminary hearing.

lane changes, and looked frequently in the rear-view mirror, suggesting to the officer that the driver was trying to evade surveillance. The officer put a flashing light in his windshield to stop the truck and donned a police vest; as he approached, Lockett got out and ran. The officer apprehended him. In Lockett's pants pocket the officer found a bank debit card that had been lost by a Jessica Almanza on July 4, 2010. The steering column of the truck had been cracked open and the truck could be started without an ignition key. Lockett did not have an ignition key in his possession. He told the officer he had borrowed the truck from a friend named Jeremy and suspected it might be stolen. He did not know Jeremy's last name or address. Lockett told the officer his own address was apartment 6, 1484 North Cedar Avenue, which is located at the intersection of Cedar Avenue and Home Avenue. The officer had seen the truck parked at an apartment building at that intersection the day before. Lockett told the officer he found the debit card on the ground and had no intention of using it fraudulently.

The district attorney filed an information charging Lockett with four counts: (1) unlawfully taking or driving a vehicle (Veh. Code, § 10851, subd. (a)); (2) receiving a stolen vehicle (Pen. Code, § 496d, subd. (a)); (3) receiving a stolen debit card (Pen. Code, § 496, subd. (a)); and (4) driving without a license (Veh. Code, § 12500, subd. (a)). The information also alleged that Lockett had served three prior prison terms within the meaning of Penal Code section 667.5, subdivision (b).

Lockett testified at trial. He said he borrowed the truck from a person named James who lived on South Kirk, near his cousin's house. He borrowed the truck from James at 10:00 a.m. on August 10, in exchange for $25 and a full tank of gas. He borrowed it to help Celelia Young, the mother of one of his children, move a couch from Madera to Fresno. He thought James owned the truck, even though it had a damaged steering column, it could be started without a key, and James said he lost the key. Lockett told the police officer that he borrowed the truck from James, not Jeremy, and he never told the officer he suspected the truck was stolen. He never said his home address was

4.

1484 North Cedar. He only told the officer he "stay[ed]" at that address. He was not there on August 9, when the officer saw the truck parked there. He found the debit card in the truck and planned to give it to James.

Later, during his surrebuttal, Lockett admitted he had given 1484 North Cedar, apartment 6, as his home address to his parole officer as well as to the officer who arrested him on August 10 and to another officer on another occasion, and that he was in fact at that location on August 9, 2010. He explained that he had been confused and scared when he testified otherwise the day before.

Celelia Young testified for the defense and said that around 8:00 a.m. on August 10, Lockett was at her house and she asked him to borrow a truck so he could help her move her couch. Lockett left, and later, at about 10:00 a.m., he told her by phone that he had paid a man $25 for the loan of a truck. Lockett had just pulled up outside her house around 11:30 a.m. when he was arrested.

The prosecutor moved to dismiss count four, driving without a license, because she was unable to bring an expert from the Department of Motor Vehicles to testify. The court granted the motion.

The jury found Lockett guilty of count one, unlawfully taking or driving the truck, and count two, receiving the stolen truck, but not guilty of count three, receiving the stolen debit card. Lockett admitted two prior prison term allegations and denied the third. The court found the third true after a bench trial.

A single sentencing hearing was held for both cases on January 6, 2011. In case No. F10904121, the court imposed the three-year upper term for unlawfully taking or driving a vehicle and the three-year upper term for receiving a stolen vehicle. Pursuant to Penal Code section 654, it stayed the sentence for receiving a stolen vehicle. It then imposed three 1-year enhancements for the three prior prison terms, for a total of six years. In case No. F09906230, the court imposed the upper term of three years for possession of cocaine base and the upper term of three years for possession of

5.

methamphetamine, both to run concurrently with the sentence in case No. F10904121. The court imposed the three 1-year enhancements for prior prison terms and stayed them pursuant to Penal Code section 654. It gave Lockett credit for time served for the two misdemeanors, marijuana possession, and resisting arrest.

## *DISCUSSION*

### I.    *Marsden*

The declaration that Lockett wrote and that his counsel submitted to the court is reproduced below. It was captioned "Declaration of Lamont Deon Lockett in Support of: (Oral Testimony)." It was written in all capital letters, which have been omitted for the sake of readability.

> "I, Lamont Deon Lockett, [do] hereby declare:

> "1).    All of the facts stated herein are within my personal knowledge, except those matters based on information and belief, and as to those matters, I believe them to be true. If called to testify as to the truth of the matters stated herein [I could do so].

> "2).    Defendant asserts and has asserted he did not steal a 1991 Chevy Silverado.

> "3).    Defendant points to the HEAT [Help Eliminate Auto Theft team surveillance testimony of Mr. Officer Wood. This undercover HEAT team was unable to determine [who] actually stole said 1991 Silverado truck.

> "4).    Intermittent surveillance over the course of two days produced 'zero' identification.

> "5).    Defendant did provide information regarding where or whom he borrowed said 1991 Silverado truck from. Defendant provided the person[']s identity and address to detectives. 'James Fuller' 2518 S. Kirk.

> "6).    This provided information was never investigated by defendant[']s counsel or, investigators from Fresno Police Dept., 'effectiv[e]ly' denying defendant his 'opportunity' to show he in fact, 'borrowed' said 1991 Silverado truck from a 'third party.'

"7).    This provided information was corroborated by witness (Lisa Green) during an interview conducted on November 23, 2010.  Still nobody attempted to contact 'James Fuller.'

"8).    This provided information was also corroborated by witness (Celelia Young) and she also 'specific[al]ly' mentioned the first name of James.  To date 'zero' investigation has been conducted by the defense or prosecution regarding this testimony of facts.

"9).    Defendant also asserts he was not involved in the 'purse snatch' allegations concerning a stolen credit card belonging to Jessica Almanza.

"10).   Defendant asserts he was incarcerated on July 4, 2010 [when Almanza's debit card was taken] and this alleged offense was in fact committed by an unknown person and documentary evidence obtained from Fresno County Jail records [is] factual material evidence showing defendant was in fact detained from, '7-1-10 [until] 7-6-10.'

"11).   Defendant does admit[] that he found said 'credit card' of Jessica Almanza.

"12).   Defendant humbly asks this court to consider offering a 'plea' to a lesser charge concerning the stolen vehicle.  Defendant did in fact drive this vehicle[;] however, he was not aware it was stolen.  Defendant contends it's not his int[e]rest to go to trial and, in the int[e]rest of the People and judicial economy it would serve all parties best if a trial can be avoided and a plea to a lesser charge be reached.

"13).   Defendant is willing to accept responsibility [if] a lesser charge can be obtained.

"I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct."

On the morning when the trial was to begin, before the jury was brought in, defense counsel gave this declaration to the court and said, "I interpret that [document] to mean a request for a Marsden hearing, and I thereby request that on his behalf at this point in time."  The court took the declaration, asked the prosecutor to leave the courtroom, and read the declaration.  The court then proceeded to inquire about Lockett's request to plead guilty to lesser charges.  The court and defense counsel discussed the fact

that Lockett had earlier rejected an indicated sentence of 28 months, consisting of the lower term of 16 months for one of the counts plus one year for one of the prior prison term enhancements. The court concluded that there was nothing further to be said on this topic, since Lockett had already declined the earlier proposal and a better one was not forthcoming: "So he can't really, you can't really go lower than that.… My understanding is, he rejected that, so we're here now."

The court then questioned Lockett: "Now, Mr. Lockett, let me just ask you, what's your issue here?" Lockett replied:

> "My issue is, sir, I was, basically I was trying to, basically if, with this case, run it concurrent with my other case, basically to meet in between as far as with the time frame, because the case basically, I don't really want to basically take it to trial, but we're looking for basically the plea. Because of the nature of the case, it was, it's a lot of he said/she said, and I know I actually got caught inside the truck, you know, but for me not knowing that the truck was stolen, and I have to pay the consequences by my record, and by my past, and I don't want to lose going all the way to trial because I have kids. I have a newborn daughter that I want to get home to fast as possible. So I want to resolve it and mediate a term so that we, I can make it."

With further discussion, the court confirmed that another judge had given an indicated sentence of 28 months, that this was less time than the prosecution had been willing to offer, and that Lockett had rejected it. The court said, "I don't see this as a Marsden, I see this as a, it's an effort to try to resolve it," an effort that was fruitless under the circumstances.

Despite the court's view that the proceedings were not really a *Marsden* hearing, Lockett's counsel volunteered some comments in defense of his investigation. He interviewed Celelia Young and she would be testifying. He interviewed Lisa Green and concluded that she gained all her knowledge of the facts from Lockett himself, and any testimony by her would be inadmissible hearsay. He also spoke to Lockett's parole officer in the hope that the parole officer would be able to show by GPS records that Lockett could not have stolen the truck on the night of August 4 or the morning of

August 5. Counsel learned, however, that Lockett's GPS monitoring had not begun until the afternoon of August 5. Lockett thought the parole officer was lying and had asked his counsel to obtain the GPS records and review them himself, and counsel had decided not to do that. Defense counsel did not mention any effort to find a James Fuller, the person from whom Lockett claimed he borrowed the truck.

The court next asked Lockett if he had anything to add. Lockett said no.

After saying "I don't know if this is a Marsden hearing officially or not," the court said it believed, from what it had heard, that counsel's investigation was adequate. It also said, "we have gone over the offers that were previously made in the courts below, I have indicated that I am not inclined to make any further offers on my own motion at this juncture, seeing how this is the time and place set for trial." "Obviously, I would accept a plea to the sheet," the court continued—that is, a plea of guilty as charged—and then Lockett could "take his chances on sentencing." Defense counsel said this "would be a good idea" in "this particular court," but Lockett did not choose to do it.

Lockett's argument now is that his counsel's request for a *Marsden* hearing required the court to hold one. The requirement to hold a hearing included an obligation to make inquiry about the reasons for the request for new counsel, which in this case included the alleged failure to investigate James Fuller—a particularly important failure, Lockett says, because his sole defense was that he borrowed the truck from Fuller without knowledge that it was stolen. He says the judgment should be reversed because the court did not make that inquiry.

A trial court is required to hold a *Marsden* hearing only when there is "'at least some clear indication by defendant that he wants a substitute attorney.' [Citations.] 'The mere fact that there appears to be a difference of opinion between a defendant and his attorney over trial tactics does not place a court under a duty to hold a *Marsden* hearing.' [Citation.]" (*People v. Valdez* (2004) 32 Cal.4th 73, 97.) Once the requirement to hold a hearing is triggered, then if the "defendant complains about the adequacy of appointed

counsel," the trial court has a duty to "permit [him] to articulate his causes of dissatisfaction and, if any of them suggest ineffective assistance, to conduct an inquiry sufficient to ascertain whether counsel is in fact rendering effective assistance." (*People v. Eastman* (2007) 146 Cal.App.4th 688, 695.) The defendant is entitled to substitution of counsel if he shows inadequate representation or an irreparable breakdown in the attorney-client relationship. (*People v. Smith* (1993) 6 Cal.4th 684, 696.) We review the court's decision not to relieve appointed counsel for abuse of discretion. (*Ibid.*)

Lockett did not make any clear indication to the trial court that he wanted a substitute attorney. His declaration included complaints about his counsel's investigation, but it did not say that Lockett wanted a new attorney because of an inadequate investigation. Instead, it said Lockett wanted to reach a plea agreement and avoid trial. When the court questioned Lockett, Lockett did not say he wanted a new lawyer because of inadequacies in his counsel's investigation or for any other reason. He said he wanted to negotiate a plea deal. In our view, the court did not abuse its discretion when it concluded that Lockett was asking to reopen plea negotiations, not to replace his lawyer. As a result, the court's duty to hold a *Marsden* hearing and make an inquiry about Lockett's dissatisfaction with his counsel was not triggered. Because this requirement was not triggered, we need not decide whether, if it had been triggered, the court would have been obligated to inquire about—and determine the adequacy of—counsel's investigation of Fuller.

Our Supreme Court recently has made it clear that this court has, on some occasions, erred by demanding too little of defendants who claim on appeal that they were entitled to a *Marsden* hearing. It stated that, in several cases, we "incorrectly implied" that a *Marsden* hearing can be triggered by "something less than a clear indication" that a defendant wants new counsel. (*People v. Sanchez* (2011) 53 Cal.4th 80, 90, fn. 3.) We believe we would be making that error again if we held that a *Marsden* hearing was triggered in this case.

Lockett argues that it is enough that his counsel expressly made a *Marsden* motion, since making a *Marsden* motion is the same as asking for substitution of counsel and a defendant can act through counsel. Ordinarily, this would be correct. (*People v. Sanchez, supra,* 53 Cal.4th at p. 84 [*Marsden* hearing triggered when there is clear indication by defendant "either personally or through counsel" that defendant wants new lawyer].) We are not aware of any previous case in which defense counsel's express request for a *Marsden* hearing was not sufficient to trigger the hearing. If, at the time the court concluded it did not "see this as a Marsden," it was aware only of counsel's request for a hearing, we likely would have to remand for that hearing.

As it is, however, the trial court had before it everything necessary to enable it to determine for itself whether Lockett was really asking for a new attorney. Lockett's counsel said his request for a hearing was based on his interpretation of Lockett's declaration. The court reviewed that declaration and asked Lockett to explain himself orally. Neither the declaration nor Lockett's statements in court included a direct or indirect request for a new lawyer. Under these particular circumstances, the court could properly determine that counsel's interpretation was mistaken and that Lockett was not requesting substitution of counsel.

## II. *Striking prior prison term enhancements*

The parties agree that the trial court could not properly apply Penal Code section 654 to stay the prior prison term enhancements in case No. F09906230, and that it was required to strike them instead if its intention was that Lockett not serve the extra time. "Once the prior prison term is found true within the meaning of section 667.5(b), the trial court may not stay the one-year enhancement, which is mandatory unless stricken." (*People v. Langston* (2004) 33 Cal.4th 1237, 1241.) The parties also agree that, by attempting to stay those enhancements—which were based on the same prison terms as the three 1-year enhancements the court imposed without a stay in the other case—and by stating that Lockett would be serving a "six-year term encompassing both

11.

cases," the trial court manifested its intention that Lockett not serve the three additional years, which would have made a total of nine. We agree. We have authority to correct the unauthorized sentence by striking the enhancements in accordance with the trial court's manifest intention (*People v. Garcia* (2008) 167 Cal.App.4th 1550, 1562) and will do so.

## *DISPOSITION*

The judgment is modified to strike the prior prison term enhancements in case No. F09906230. The trial court is directed to correct the abstract of judgment to reflect this modification and to forward the corrected abstract to the appropriate correctional authorities. The judgment is affirmed as modified.