Filed 8/1/25  P. v. Hernandez CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>CHRISTOPHER HERNANDEZ,<br><br>  Defendant and Appellant. | D084189<br><br><br>(Super. Ct. No. SCE420474) |

APPEAL from a judgment of the Superior Court of San Diego County, Patricia K. Cookson, Judge.  Affirmed.

William D. Farber, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, A. Natasha Cortina and Liz Olukoya, Deputy Attorneys General, for Plaintiff and Respondent.

Christopher Hernandez robbed two loss prevention officers at a Home Depot store and one at a Macy's department store.  A jury convicted Hernandez of three robberies and the trial court sentenced him to four years in prison.  On appeal, Hernandez argues the trial court violated Penal Code section 654 when it imposed concurrent sentences for both Home Depot robbery convictions.[1]  Because the robberies involved two separate victims, the court's decision to impose both sentences was appropriate under the multiple victim exception that applies to section 654.  Accordingly, the judgment is affirmed.

FACTUAL AND PROCEDURAL BACKGROUND

Around 8:45 p.m., J.T. and B.C. were on duty as loss prevention officers for Home Depot.  J.T. saw Hernandez and was suspicious Hernandez was shoplifting because he was constantly looking down, looking over his shoulder, looking to see if someone was watching him, and being "very furtive."  Hernandez was holding a black backpack and walking towards the power tools aisle.  He had two pieces of merchandise under his arm.  J.T. called B.C. to notify him about Hernandez's suspicious behavior and B.C. began watching Hernandez.

In the power tool aisle, Hernandez took a power grinder from the display rack and put it into his backpack along with the two other electrical tools he had been carrying under his arm.  J.T. followed Hernandez and told B.C. he was going to wait outside for Hernandez and potentially approach him.  B.C. continued watching Hernandez.  Hernandez walked past the registers and self-checkout, and did not pay for the items in his backpack or leave the tools anywhere in the store.  As Hernandez reached the exit, B.C. followed behind him and J.T. waited outside the store.

---

[1]     Subsequent undesignated statutory references are to the Penal Code.

J.T. approached Hernandez at the exit, identified himself as a loss prevention officer, and asked Hernandez to give him the merchandise. B.C. went outside to witness the interaction. When Hernandez refused to return the merchandise, J.T. held on to one side of the backpack and Hernandez held onto the other side. J.T. told Hernandez if he returned the merchandise, he could leave, but Hernandez refused. They continued arguing, and after a minute or two Hernandez yanked the backpack away from J.T. and started walking away.

J.T. yelled out, "We know who you are, Christopher Hernandez," then J.T. turned around to face B.C. B.C. saw Hernandez reach into his bag, and told J.T., "he's reaching in." J.T. understood this to mean Hernandez might be reaching for a weapon. J.T. then looked back over his shoulder, and saw Hernandez aggressively walking back towards him holding a gun in his right hand. J.T. yelled, "he has a gun. He has a gun." J.T. and B.C., fearing for their safety, ran into the store and called police. Hernandez then left. B.C. testified he did not personally see the gun, but that he could not see Hernandez's hands from where he was standing.

Several weeks later, around 11:37 a.m., E.S. and P.R. were working as loss prevention officers for Macy's. From their camera office, E.S. and P.R. watched Hernandez on a live closed circuit television carrying an old, empty-looking bag, making furtive movements, and walking around the store. Hernandez approached a fragrance counter, picked up two fragrance bottles used as testers, and put them into his bag. E.S. left the camera office to get closer to Hernandez. P.R. continued watching Hernandez in the camera room for another minute or two, and remained in communication with E.S.

Hernandez then exited the store without returning or paying for the fragrance bottles. In response, E.S. approached Hernandez and identified

3

himself as Macy's security. Hernandez told E.S. he did not have any store merchandise on him. E.S. asked Hernandez to come back to the loss prevention office, and Hernandez began running away. E.S. ran after Hernandez. When E.S. reached Hernandez, he was holding the fragrance bottles in his right hand and pushed E.S. away with his left hand. By this time, P.R. had left the camera room and come outside of Macy's to assist E.S. The two men were eventually able to detain Hernandez with the help of mall security, and escorted him back to their office while a bystander called police. E.S. took the fragrance bottles from Hernandez's backpack and handed him over to police officers who had arrived.

Hernandez took the stand in his own defense and admitted committing both robberies. Hernandez admitted stealing a pair of pliers and the grinder power tool from Home Depot and said he hoped to sell them to make some money for food. Hernandez denied having a gun at Home Depot and said J.T. likely saw a cell phone in his hand. He also admitted taking the fragrance bottles from Macy's, and said he hoped to sell them for money.

At the conclusion of the trial, the jury found Hernandez guilty of three counts of robbery against B.C., J.T., and E.S. (§ 211). In a bifurcated proceeding, Hernandez admitted, and the court found true, two aggravating factors: that Hernandez was on probation, mandatory supervision, post release community supervision, or parole when he committed the crimes (Cal. Rules of Court, rule 4.421(b)(4)); and that Hernandez's prior performance on parole was unsatisfactory (*id.*, rule 4.421(b)(5)). The prosecutor dismissed two other aggravating factors (*id.*, rule 4.421(b)(1) & (b)(2)). The court also found Hernandez in violation of probation in four open Drug Court matters (§ 1203, subd. (k)) and revoked his probation.

At a subsequent hearing, the court sentenced Hernandez to four years in prison, consisting of the middle-term sentence of three years for the robbery of B.C., a concurrent three-year term for the robbery of J.T., and a consecutive one-year term (one-third the middle term) for the robbery of E.S.

Hernandez timely appealed from the judgment of conviction.

## DISCUSSION

Hernandez's sole argument on appeal is that the trial court violated section 654 by imposing concurrent sentences for the robbery convictions related to B.C. and J.T. because both convictions pertain to a singular course of conduct. The Attorney General responds the sentence was proper because Hernandez robbed two victims, which falls under an exception to section 654's preclusion against multiple punishments.

Section 654, subdivision (a) provides that "[a]n act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision." This provision "precludes multiple punishments for a single act or indivisible course of conduct." (*People v. Hester* (2000) 22 Cal.4th 290, 294.) With respect to whether section 654 applies to preclude multiple punishments, a course of conduct is generally indivisible if the defendant harbored a single criminal objective the entire time. (*People v. Gaio* (2000) 81 Cal.App.4th 919, 935.)

" 'Whether a course of criminal conduct is divisible ... depends on the intent and objective of the actor.' [Citations.] '[I]f all the offenses were merely incidental to, or were the means of accomplishing or facilitating one objective, defendant may be found to have harbored a single intent and therefore may be punished only once.' [Citation.]" [Citation.]' [Citations.] However, if the defendant harbored 'multiple or simultaneous objectives,

5

independent of and not merely incidental to each other, the defendant may be punished for each violation committed in pursuit of each objective even though the violations share common acts or were parts of an otherwise indivisible course of conduct.' " (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143.)

Further, and critically here, " 'the limitations of section 654 do not apply to crimes of violence against multiple victims.' " (*People v. Oates* (2004) 32 Cal.4th 1048, 1063, superseded by statute on other grounds as stated in *People v. Tirado* (2022) 12 Cal.5th 688, 696.) Even if the defendant has the same objective when committing a crime of violence against multiple victims, multiple punishment is warranted because a defendant who commits an act of violence " 'by a means likely to cause harm to several persons is more culpable than a defendant who harms only one person.' " (*Oates,* at p. 1063.)

"The trial court has broad latitude in determining whether section 654, subdivision (a) applies in a given case." (*People v. Garcia* (2008) 167 Cal.App.4th 1550, 1564.) "When a trial court sentences a defendant to separate terms without making an express finding the defendant entertained separate objectives, the trial court is deemed to have made an implied finding each offense had a separate objective." (*People v. Islas* (2012) 210 Cal.App.4th 116, 129.) Such findings will be upheld on appeal if supported by substantial evidence. (*Ibid*.)

Here, it is undisputed that Hernandez's crime involved two victims, and their testimony showed that his actions caused them both fear and forced them to run back into the Home Depot store for safety. This allowed Hernandez to escape with the stolen items. While the trial court sentenced Hernandez concurrently for the two separate convictions to avoid increased punishment for the single course of conduct, as discussed, section 654 does

6

not preclude separate punishments for each victim.  Accordingly, we agree with the Attorney General that the trial court properly imposed concurrent sentences for both robbery convictions.

DISPOSITION

The judgment of conviction is affirmed.

McCONNELL, P. J.

WE CONCUR:

IRION, J.

CASTILLO, J.