Filed 6/24/26  P. v. Sandoval CA3

NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

| | |
|---|---|
| THE PEOPLE,<br>    Plaintiff and Respondent,<br><br>v.<br><br>JOHN FRANCIS SANDOVAL,<br>    Defendant and Appellant. | C102178<br><br>(Super. Ct. No.<br>STKCRFDV20205714) |

A jury found defendant John Francis Sandoval guilty of assault with a deadly weapon, attempted criminal threats, attempted witness dissuasion, willfully harming a peace officer's dog, illegal possession of ammunition, and exhibiting a deadly weapon to resist arrest.  The trial court sentenced defendant to 25 years to life in prison.

On appeal, defendant contends the trial court erred by:  (1) overruling his objection to the prosecutor's peremptory challenge of a prospective juror; and (2) imposing concurrent terms on the attempted criminal threats count and the attempted dissuasion count.  We disagree and affirm.

Statutory references are to the Penal Code unless otherwise specified.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.  Factual Background

Defendant and his girlfriend lived in a tent and a car.  One morning, defendant fought with girlfriend in the car.  Girlfriend called their son to pick her up.  After defendant

1

heard the call, he started yelling, got out of the car, and took a six-pack of water bottles and an ice chest from the trunk and threw them at girlfriend. Girlfriend told defendant to calm down but in response, defendant swung a hatchet at her through a half-open car window and said he was going to kill her. Girlfriend screamed for help and pepper sprayed defendant in the eye. Defendant briefly stopped the attack. At the same time, a man came by and asked defendant to stop. Defendant walked away from the car to talk to the man for about six minutes.

Girlfriend called 911 while defendant was talking to the man. Defendant returned during the 911 call, jumped in the car while holding the hatchet, and told girlfriend he would kill her if he went to jail.

The police officers arrived and told defendant to go over to them. Defendant picked up the hatchet and a knife, walked to the tent, and sat in front of it. He rejected the officers' multiple commands to drop the weapons. After some back and forth with the officers, defendant started walking towards the officers with the hatchet and the knife in his hand. Defendant told the officers he would not put down the weapons, he would not go with them, and they would have to shoot him.

A crisis team arrived and started negotiating with defendant. During the negotiations, defendant tossed the hatchet but immediately pulled out another knife from his pocket. When the negotiations broke down, defendant took several steps towards the officers, appearing loud and agitated. Defendant again disregarded the officers' commands to drop his weapons. A sheriff's deputy released a police dog on defendant. The dog bit defendant's arm, and defendant stabbed the dog in the chest. Another police dog was released on defendant, and a group of officers rushed to control defendant. The officers eventually overpowered defendant and took him into custody.

## II.   *The Charges, Jury Verdict, and Sentencing*

The People charged defendant with assault with a deadly weapon (§ 245, subd. (a)(1), count one), criminal threats (§ 422, subd. (a), count two), attempt to prevent or

2

dissuade a victim or witness from reporting a crime (§ 136.1, subd. (b)(1), count three), willfully harming a peace officer's dog (§ 600, subd. (a), count four), illegal possession of ammunition (§ 30305, subd. (a)(1), count five), and exhibiting a deadly weapon to resist arrest (§ 417.8, count six). The People also alleged various special circumstances, prior strikes and prior serious felonies, and aggravating circumstances.

A jury found defendant guilty of counts one and three through six. As for count two, the jury found defendant guilty of the lesser included offense of attempted criminal threats. The jury also found true some special circumstances. In a bifurcated trial, the trial court found true the prior strike and prior serious felony allegations as well as some aggravating circumstance allegations.

The trial court sentenced defendant to 25 years to life in prison, consisting of the primary term of 25 years to life on count one and concurrent terms on counts two through six. It struck various enhancements.

Defendant timely appeals.

## DISCUSSION

### I. Peremptory Challenge

Defendant contends the trial court erred by overruling his Code of Civil Procedure section 231.7 (section 231.7) objection to the prosecutor's peremptory challenge to a Latino prospective juror. The prosecutor provided two reasons for the challenge: (1) prospective juror stated he would defend himself against a dog attack; and (2) prospective juror noted defendant's life was on the line and appeared hesitant in his answers about making an impartial decision. In defendant's view, both reasons are presumptively invalid and the prosecutor failed to rebut the presumptions. We disagree.

A. Additional Voir Dire Background

During voir dire, defense counsel asked prospective juror how he felt about the police dog injury charge. Prospective juror responded: "I mean, I do love animals, but I don't know the situation. Like if a dog was attacking me, I'd want to defend myself. So

3

like there are situations to where, yeah, it might be necessary to save your own life." He elaborated: "I can see both sides. A police dog … is trained. If you tell it to attack someone, it's going to attack until you actually say to stop. At that point, I could see both sides and why he would actually try to defend himself if the cop doesn't say to stop, he can rip his arm apart or something like that. [¶] … You don't know the situation so it's wrong to actually speak on it right now."

The prosecutor asked prospective juror to clarify what he meant when he said he did not know the details and could not make a decision. Prospective juror explained: "I mean this dude's life is on the line. If I don't know any of the details, then it would be wrong for me to actually say whether he's guilty or not, that's just foolish." The prosecutor followed up: "[W]hen you say that this guy's life is on the line, to me what I'm hearing is that you're evaluating the circumstance[s] from his perspective possibly … Am I assessing that correctly?" Prospective juror responded: "Maybe I'm doing that on an unconscious level. I don't really think that's the case." The prosecutor continued to question prospective juror about his ability to remain impartial and prospective juror repeatedly assured the prosecutor that he would base his verdict solely on the evidence and the trial court's instructions.

Defense counsel also asked other prospective jurors how they felt about the police dog injury charge. Juror No. 5 responded: "[I]t kind of bugs me. [¶] Just because I'm really close to my dog … [¶] I understand that humans are going to defend themselves if [the dog] is attacking them. So I can see both sides." Juror No. 6 said: "I mean I like animals, but I'd hear what happened." And juror No. 10 stated: "I feel bad that the dog was injured. I felt bad, but I don't know the situation."

After voir dire, the prosecutor exercised a peremptory challenge against prospective juror, and defendant raised a section 231.7 objection. The prosecutor provided two reasons for the challenge: (1) prospective juror commented that he would want to defend himself if a dog attacked him; and (2) prospective juror's observation that

4

defendant's life was on the line and the hesitance in his answers suggested he might unconsciously put himself in defendant's position when making a decision.

The prosecutor elaborated on the second reason: "[Prospective juror] also indicated that, something to the effect of the defendant's life is in my hands, or something with that consideration … He appeared to be really hesitant in his responses. He indicated he might have an unconscious bias towards that. He seemed to be really unsure of his responses of whether he could put that aside, whether he could not consider the weight or import of the decision, that it would prevent him from making a decision in this case, not putting himself in the defendant's position or shoes. He also seemed that he may not be able to evaluate the case from a non-biased perspective. [¶] I just felt a lot of the times when I did follow-up questions with him he was hesitant, he was wishy-washy … and was unsure of whether he – he did indicate that he would follow the law, but that was not consistent with how he was – the tone or the hesitation in his answers, in my view, and I did not feel confident that he would give the People a fair trial in the same way, either intentionally or an unconscious bias toward the defendant's position." Defense counsel countered: "I don't agree that he was wishy-washy … [W]hen he paused, I think he was thinking about how to respond."

The trial court observed that both defendant and prospective juror have traditionally Latin-based surnames and "suspect[ed]" they "may be" members of the same cognizable group.[1] It did not know the race of girlfriend and noted one witness had a Latin-based surname. The trial court declined to find that jurors of a different racial or ethnic group than prospective juror provided similar answers but were unchallenged. It also stated: "The reasons given for the exclusion of [prospective juror] were borne out through the questioning, and one of them being he appeared []equivocal. He did say

---

[1] At sentencing, defendant informed the trial court that he is Native American but carries his stepfather's surname.

5

today at one point that the defendant's life was in his hands and he didn't think he could make a decision … he may have said something without all the facts." It overruled defendant's section 231.7 objection, finding no substantial likelihood that an objectively reasonable person would view the challenge as related to prospective juror's race.

### B. Presumptively Invalid Reasons for a Peremptory Challenge

"A party shall not use a peremptory challenge to remove a prospective juror on the basis of the prospective juror's" race and ethnicity, among other things. (§ 231.7, subd. (a).) Upon a party's objection to the improper use of a peremptory challenge under section 231.7, the trial court "shall evaluate the reasons given to justify the peremptory challenge in light of the totality of the circumstances. The court shall consider only the reasons actually given and shall not speculate on, or assume the existence of, other possible justifications for the use of the peremptory challenge. If the court determines there is a substantial likelihood that an objectively reasonable person would view race, ethnicity, … as a factor in the use of the peremptory challenge, then the objection shall be sustained. The court need not find purposeful discrimination to sustain the objection." (§ 231.7, subds. (b), (d)(1).) A "substantial likelihood" means "more than a mere possibility but less than a standard of more likely than not." (§ 231.7, subd. (d)(2)(B).) Section 231.7, subdivision (d)(3) provides an unexhaustive list of circumstances that the trial court may consider in making the substantial likelihood determination, and subdivisions (e) and (g) identify two categories of presumptively invalid reasons for a peremptory challenge.

We review the trial court's overruling of the objection de novo and its express factual findings for substantial evidence. (§ 231.7, subd. (j).) We do not impute to the trial court any findings, including findings of a prospective juror's demeanor, that the trial court did not expressly state on the record, and consider only reasons actually given to explain the use of the peremptory challenge. (§ 231.7, subd. (j).) In the analysis

6

below, we first examine the validity of the stated reasons for the peremptory challenge and then make the substantial likelihood determination.

### 1. Section 231.7, subdivision (e)(13)

A peremptory challenge based on "[a]ny justification that is similarly applicable to a questioned prospective juror or jurors, who are not members of the same cognizable group as the challenged prospective juror, but were not the subject of a peremptory challenge by that party" is presumed to be invalid unless the party exercising the peremptory challenge can show by clear and convincing evidence that an objectively reasonable person would view the rationale as unrelated to a prospective juror's race or ethnicity. (§ 231.7, subd. (e)(13).) This provision is inapplicable here. Although some unchallenged jurors provided similar questions as prospective juror about their feelings on defending against a dog attack, the record does not show the race or ethnicity of any of these jurors. The trial court also declined to find that jurors of a different group provided similar answers but were unchallenged.

### 2. Section 231.7, subdivision (g)(1)(C)

A peremptory challenge based on a prospective juror's answers being unintelligent or confused is also presumptively invalid. (§ 231.7, subd. (g)(1)(C).) Section 231.7, subdivision (g)(2) prescribes a two-step process to rebut this presumption: (1) the trial court confirms that the asserted behavior occurred, based on the court's own observations or the observations of counsel for the objecting party (the confirmation requirement); and (2) the counsel offering the reason explains why the asserted demeanor, behavior, or manner in which the prospective juror answered questions matters to the case to be tried (the explanation requirement). (*People v. Ortiz* (2023) 96 Cal.App.5th 768, 794.) Where the trial court has made explicit factual findings at the confirmation stage, we review those findings for substantial evidence. (*Id.*, at p. 801.) But we only determine whether any explanation was provided by the prosecutor, not whether such explanation was supported by substantial evidence. (*Id.* at p. 804.)

Once these two requirements have been fulfilled, "the proffered reason that falls under section 231.7, subdivision (g)(1) is no longer presumptively invalid and can be considered as a valid reason when the court ultimately determines if 'there is a substantial likelihood that an objectively reasonable person would view race … as a factor in the use of the peremptory challenge.' " (*People v. Ortiz, supra*, 96 Cal.App.5th at p. 804.)

Here, the confirmation requirement was fulfilled. The prosecutor noted prospective juror said defendant's life was in his hands and appeared hesitant and "wishy-washy" in many of his answers. The trial court confirmed prospective juror stated that defendant's life was in his hands and defendant concedes the trial court "found that [prospective juror's] answers appeared []equivocal." The trial court's findings are supported by substantial evidence. Prospective juror said "this dude[']s life is on the line" in his answer to one of the prosecutor's questions. The prosecutor followed up, asking prospective juror whether this answer meant he would evaluate the case from defendant's perspective. Prospective juror responded: "Maybe I'm doing that on an unconscious level. I don't really think that's the case." Defense counsel further acknowledged defendant paused during his answers.

Defendant argues at length that prospective juror provided clear and unequivocal answers, never admitted harboring unconscious bias, and repeatedly assured the prosecutor he would decide the case based on the evidence and the law. He also argues the trial court misconstrued prospective juror's statement about having defendant's life in his hands. At most, defendant's argument points out contrary evidence. But the trial court is in the best position to determine prospective juror's state of mind because it has a firsthand observation of his demeanor and verbal responses. (*People v. Ramirez* (2022) 13 Cal.5th 997, 1049.) And in a substantial evidence review, we do not reweigh the evidence; instead, we accept all evidence supporting the trial court's decision and disregard contrary evidence. (*Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 581.)

8

The explanation requirement was also fulfilled. The prosecutor expressed concerns that prospective juror's answers and demeanor indicated he may unconsciously put himself in defendant's shoes and deny the People a fair trial. Thus, the prosecutor's demeanor-based peremptory challenge "can be considered as a valid reason" in our substantial likelihood determination. (*People v. Ortiz, supra*, 96 Cal.App.5th at p. 804.)

### 3. Substantial Likelihood

There is no substantial likelihood that a reasonable person would view race or ethnicity as a factor in the prosecutor's use of the peremptory challenge.

One of the charges against defendant was inflicting serious injury on a police dog, and prospective juror said: "[I]f a dog was attacking me, I'd want to defend myself … [I]t might be necessary to save your own life." This answer suggests prospective juror might be sympathetic of defendant's attack on the police dog. While other unchallenged jurors provided similar answers about defending against a dog attack, the record does not reflect the race of these jurors.

Prospective juror also stated he could not make a decision without knowing all the facts because "[defendant's] life is on the line." When the prosecutor asked whether this statement meant he would evaluate the case from defendant's perspective, prospective juror answered: "Maybe I'm doing that on an unconscious level." These answers legitimately gave rise to the prosecutor's concerns that prospective juror might deny the People a fair trial. (See *People v. Ortiz, supra*, 96 Cal.App.5th at p. 804 [the prosecutor's demeanor-based reasons become valid once the presumption is rebutted under section 231.7, subd. (g)(2)].)

None of the other section 231.7, subdivision (d)(3) factors sway our decision. Both the trial court and counsel perceived defendant and prospective juror as Latinos even though defendant later stated he is Native American. (§ 231.7, subd. (d)(3)(A)(i).) It is unclear whether girlfriend is Latina and only one witness has a Latin-based surname. (§ 231.7, subd. (d)(3)(A)(ii)-(iii).) Race or ethnicity does not bear on the facts of this

9

case.  (§ 231.7, subd. (d)(3)(B).)  And prosecutor exercised the peremptory challenge after extensive questioning of prospective juror.  (§ 231.7, subd. (d)(3)(C)(ii).)  We acknowledge that prospective juror repeatedly assured the prosecutor he would make an impartial decision following the law and evidence.  But given the totality of the circumstances, we cannot find a substantial likelihood that an objectively reasonable person would view race or ethnicity as a factor in the prosecutor's use of the peremptory challenge.

## II.    Sentencing

During closing, the prosecutor argued defendant committed (1) assault with a deadly weapon by swinging a hatchet at girlfriend; (2) criminal threats by threatening to kill girlfriend immediately after swinging a hatchet at her; and (3) attempt to dissuade a victim from reporting a crime by telling girlfriend while holding a hatchet that he would kill her if he went to jail.  Defendant contends the trial court erred in imposing concurrent terms on the attempted criminal threats count and the attempted dissuasion count because those counts, along with the assault with a deadly weapon count, were part of a single course of conduct with one intent and objective.  We disagree.

Section 654 "prohibits punishment for two crimes arising from a single, indivisible course of conduct."  (*People v. DeVaughn* (2014) 227 Cal.App.4th 1092, 1112.)  "Whether a course of conduct is indivisible for purposes of section 654 depends on the intent and objective of the actor.  [Citation.]  If all the offenses are incidental to one objective, the defendant may be punished for any one of them, but not for more than one.  [Citation.]  On the other hand, if the evidence discloses that a defendant entertained multiple criminal objectives, which were independent of and not merely incidental to each other, the trial court may impose punishment for independent violations committed in pursuit of each objective even though the violations shared common acts or were part of an otherwise indivisible course of conduct."  (*Ibid.*)  "Intent and objective are factual questions for the trial court, which must find evidence to support the existence of a

separate intent and objective for each sentenced offense." (*People v. Jackson* (2016) 1 Cal.5th 269, 354.)

"We review section 654, subdivision (a) multiple sentencing issues for substantial evidence." (*People v. Garcia* (2008) 167 Cal.App.4th 1550, 1564.) In conducting the substantial evidence analysis, we view the evidence in the light most favorable to the respondent and presume in support of the order the existence of every fact the trier could reasonably deduce from the evidence. (*Ibid.*)

Here, substantial evidence supports the trial court's implicit finding that defendant committed the assault with a deadly weapon and the attempted criminal threats with separate objectives. The trial court reasonably could have found that defendant committed the assault with the objective of inflicting physical harm on girlfriend and attempted to criminally threaten girlfriend with the separate objective of inflicting mental or emotional harm on her. (*In re Raymundo M.* (2020) 52 Cal.App.5th 78, 95.)

Substantial evidence also supports the trial court's implicit finding that defendant had an opportunity to reflect after assaulting and criminally threatening girlfriend but before attempting to dissuade girlfriend from reporting his crime. Under section 654, "a course of conduct divisible in time, although directed to one objective, may give rise to multiple violations and punishment." (*People v. Beamon* (1973) 8 Cal.3d 625, 639, fn. 11.) "This is particularly so where the offenses are temporally separated in such a way as to afford the defendant opportunity to reflect and to renew his or her intent before committing the next one, thereby aggravating the violation of public security or policy already undertaken." (*People v. Gaio* (2000) 81 Cal.App.4th 919, 935.) After defendant swung the hatchet at girlfriend and threatened to kill her, a man nearby told defendant to stop attacking girlfriend, and defendant walked away from the car to talk to the man for about six minutes. This six-minute talk afforded defendant an opportunity to reflect on his assault and criminal threats against girlfriend. (See *People v. King* (2010) 183 Cal.App.4th 1281, 1325-1326 [a defendant's momentary pause in the assault when a

car drove by afforded him an opportunity to reflect on his actions].)  But he renewed his intent and returned to the car, telling girlfriend he would kill her if he went to jail.  Thus, the attempted dissuasion count may be sentenced separately from the assault count and the attempted criminal threats count.

## DISPOSITION

The judgment is affirmed.


/s/
MESIWALA, J.

We concur:



/s/
HULL, Acting P. J.



/s/
KRAUSE, J.

12